**James D. SHELLTRACK, Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

**No. 90–5457.**

United States Court of Appeals, Eighth Circuit.

Submitted March 12, 1991.

Decided July 12, 1991.

---

Billy Joe Jones, Fort Yates, N.D., for appellant.

Deana R. Ertl–Lombardi, Denver, Colo., argued (Cameron W. Hayden, Bismarck, N.D., on brief), for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

HEANEY, Senior Circuit Judge.

James D. Shelltrack appeals from the district court's affirmance of the Secretary of Health and Human Services' denial of Shelltrack's application for supplemental security income (SSI) benefits under title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c (1988). We reverse and remand.

## BACKGROUND

Shelltrack, 55, has a high school education and two years of vocational training in accounting. He has past work experience as a temporary laborer in unskilled jobs, primarily involving heavy lifting. He alleges disability commencing May 4, 1988, due to arthritis in his neck, lower back, knees, and wrist. Medical records indicate that Shelltrack broke his neck and right wrist riding in a rodeo in 1968, had pneumococcal meningitis with residual neurological damage in 1973, has had chondromalacia[1] in his left knee since 1977, and broke his right leg in 1980. He has been hospitalized for alcoholism treatment eighteen times and has a long history of arrests for offenses involving intoxication.

After Shelltrack's application for SSI benefits was denied initially and on reconsideration, he requested and received a hearing before an administrative law judge (ALJ). Shelltrack testified at the hearing that he suffers from pain in his neck, back, knees, and wrist daily, and that the pain worsens with activity. He stated that he takes Motrin at least three times a day. Robert Floyd, a store owner in Cannonball, North Dakota for whom Shelltrack performed odd jobs, also stated in a Social Security Administration questionnaire that Shelltrack experienced pain whenever he did heavy physical work or lifting. Shelltrack stated that he could sit or stand for four hours a day and could lift up to fifty

---

**1.** Chondromalacia of the patella is the softening of the articular cartilage of the kneecap. *Dor-* *land's Illustrated Medical Dictionary* 262 (26th ed. 1985).

pounds.[2] He also testified that he had not used alcohol in more than a year and that alcohol was not a problem for him.[3] Shelltrack stated that he went fishing once a week and could walk two miles a day, but that he could no longer hunt because of the amount of walking it involved. He testified that the only household chore he performed was taking out the garbage once a week, but that he could groom and dress himself.

Frank Bravebull, postmaster of Cannonball, North Dakota, reported in a questionnaire that Shelltrack visited the post office often when he was not drinking, but appeared to have no hobbies other than walking around town and visiting. He described Shelltrack as slow, forgetful, easily mixed up, and in need of someone to help him feed and clothe himself properly. Bravebull believed Shelltrack had a problem with alcohol, as did Robert Floyd.

Gloris Fischer, a public health nurse in Fort Yates, North Dakota, described Shelltrack in a questionnaire as having poor comprehension and an inability to fully understand instructions. She stated that these problems had worsened in the time she had known Shelltrack. Diane Gates of the Fort Yates Public Health Service told a Social Security examiner that she believed Shelltrack had organic brain damage from chronic alcohol abuse, that he was forgetful, and that he needed to have things explained to him repeatedly.

A vocational expert testified in response to the ALJ's hypothetical questions [4] that Shelltrack could not return to any of the specific jobs he had performed in the past.

The vocational expert stated that Shelltrack could perform unskilled jobs requiring medium exertion, such as building cleaner, grounds keeper, or yard worker, but not for a full eight-hour work day.

The ALJ found that Shelltrack suffered from arthritis of the right wrist and degenerative disc disease of the lumbar and cervical spine. The ALJ noted Shelltrack's history of alcoholism, but found that because Shelltrack was not currently drinking and had not been arrested for an alcohol-related offense in two years, his alcoholism was not a factor contributing to his alleged disability. The ALJ concluded that Shelltrack did not have an impairment or combination of impairments listed in or equivalent to one listed in the social security regulations. He found that while Shelltrack could not return to his past relevant work, he retained the residual functional capacity to perform unskilled medium work, and that jobs at that exertional level existed in substantial numbers in the national economy. The ALJ thus concluded that Shelltrack was not suffering from a disability as defined in the Social Security Act and was not entitled to SSI benefits.

Shelltrack requested Appeals Council review of the ALJ's decision and submitted evidence of his intoxication when arrested for disorderly conduct three months after the ALJ hearing. The Appeals Council denied review [5] and Shelltrack filed an action for judicial review. The district court found that the ALJ's decision was supported by substantial evidence and entered

2. Shelltrack initially testified that he could lift "about 400 pounds." When the ALJ questioned that figure, Shelltrack agreed that he probably could not lift that much, but probably could lift 50 pounds.

3. Approximately three months after Shelltrack's ALJ hearing, he was arrested on the Standing Rock Indian Reservation for disorderly conduct. The arresting officer reported that Shelltrack "was heavily intoxicated and had to be helped to the patrol unit."

4. The ALJ's hypotheticals asked the vocational expert to assume an individual who could stand or walk six to eight hours a day, who could lift

50 pounds occasionally and 25 pounds frequently, who had a low average level of intellectual functioning, who had a history of alcoholism in remission with no clinically measured loss of memory, and who could relate well with co-workers and could follow and carry out oral instructions. The hypotheticals further posited an individual who suffered from the kind and level of pain Shelltrack had described.

5. The Appeals Council concluded that the evidence of Shelltrack's arrest while intoxicated did not indicate "an ongoing alcohol or other significant emotional impairment," and therefore did not warrant a change in the ALJ's findings.

summary judgment for the Secretary. Shelltrack appeals.

## DISCUSSION

■ Shelltrack contends the ALJ's finding that alcoholism is not a factor contributing to his impairments is not supported by substantial evidence. He also claims the Secretary failed to carry his burden of showing the existence of jobs in the national economy which Shelltrack could perform because the ALJ's hypothetical questions of the vocational expert did not fully set forth Shelltrack's impairments.

### I.

■ Alcoholism, alone or in combination with other impairments, can be a disabling condition. *Metcalf v. Heckler*, 800 F.2d 793, 796 (8th Cir.1986) (citing *Brand v. Secretary of HEW*, 623 F.2d 523, 524 n. 1 (8th Cir.1980)). To establish disability based on alcoholism, a social security claimant must show that he has lost self-control to the extent of being unable to seek and use means of rehabilitation and that his disability is encompassed by the Social Security Act. *Id.* (citing *Adams v. Weinberger*, 548 F.2d 239, 245 (8th Cir.1977)).

The ALJ's conclusion that alcoholism was not a factor contributing to Shelltrack's impairments was based on Shelltrack's testimony that he had stopped drinking of his own volition and that alcohol was not a problem for him. Shelltrack's brother-in-law also testified that as far as he knew, Shelltrack no longer drank. Three months later, however, Shelltrack was arrested for disorderly conduct while intoxicated. The administrative record documents numerous repeated attempts by Shelltrack to stop drinking using such rehabilitative means as in-patient treatment, Antabuse, and Alcoholics Anonymous or similar support groups. Each of these attempts failed; Shelltrack invariably returned to drinking.

The record also indicates a tendency by Shelltrack to minimize or deny his problems with alcohol. Shelltrack acknowledged at the ALJ hearing that he had been through treatment for alcoholism fifteen times, but stated that he had never been treated at a Veterans Administration hospital for alcoholism. The record, however, documents three in-patient treatments at VA hospitals since 1981. Shelltrack told Dr. Craig DeGree, a psychologist who examined him in February 1986, that he had not had a drink in four years. In October 1985, however, Shelltrack was voluntarily admitted to the VA hospital in Ft. Meade, South Dakota for treatment of chronic alcohol abuse. When Shelltrack sought treatment for thrombophlebitis of his left leg at the Fort Yates Indian Health Service Hospital in August 1986, he denied any past or present alcohol abuse, although he had again undergone inpatient treatment for chronic alcohol abuse at the Ft. Meade VA hospital three months earlier. Shelltrack also denied having any legal problems associated with alcohol, despite his lengthy history of alcohol-related arrests.

The record thus documents Shelltrack's longstanding inability to stop drinking permanently despite repeated attempts to do so and his tendency to minimize or deny his alcoholism. In light of this evidence, Shelltrack's statement at the ALJ hearing that alcohol was no longer a problem for him does not constitute substantial evidence to support the conclusion that alcoholism did not contribute to Shelltrack's impairments.[6] *See Metcalf,* 800 F.2d at 796 (finding of ability to control alcoholism cannot rest on claimant's testimony alone); *Adams,* 548 F.2d at 245 (such testimony may be relevant if, medically, claimant has the power to control his drinking; "otherwise, the statement represents the rationalizations of a sick individual who does not realize the extent of his illness").

■ In relying on Shelltrack's own testimony and lack of recent alcohol-related arrests to find no alcoholic impairment, the

---

6. Although Shelltrack's brother-in-law also testified that, as far as he knew, Shelltrack had stopped drinking, this statement does not constitute substantial evidence to support the ALJ's decision when considered in conjunction with the medical evidence, statements of Shelltrack's other acquaintances, and Shelltrack's subsequent arrest while intoxicated.

ALJ failed to fully and fairly develop the record regarding Shelltrack's alcoholism. On remand, the ALJ should inquire further into Shelltrack's ability to control his drinking and should examine the extent and degree of Shelltrack's alcoholism: its effects on him psychologically and physically, both alone and in combination with his other impairments; the extent of organ damage; and the effect of alcoholism on Shelltrack's ability to resolve his problems. *See Orr v. Heckler,* 737 F.2d 770, 771 (8th Cir.1984). If necessary, additional consultative examinations should be performed to assist in the inquiry. *See* 20 C.F.R. § 416.917 (1991).

## II.

■ Shelltrack also claims the Secretary failed to carry his burden of showing the existence of jobs in the national economy which Shelltrack could perform because, in finding that such jobs existed, the ALJ relied on the vocational expert's answers to hypothetical questions which were inadequate. We agree.

■ A hypothetical question posed to a vocational expert must fully set forth a claimant's impairments. *O'Leary v. Schweiker,* 710 F.2d 1334, 1343 (8th Cir. 1983). Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support a finding of no disability. *Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir.1990).

The ALJ's hypotheticals asked the vocational expert to assume an individual who could stand or walk six to eight hours a day, who could lift 50 pounds occasionally and 25 pounds frequently, who had a low average level of intellectual functioning, who had a history of alcoholism in remission with no clinically measured loss of memory, and who could relate well with co-workers and could follow and carry out oral instructions.

Shelltrack testified that he could stand or walk only four hours per day. The ALJ gave no reason for discrediting this statement, but found Shelltrack's testimony regarding his functional capacity "consistent with an ability to perform medium work." In responding to the hypotheticals, the vocational expert noted that while Shelltrack could perform jobs such as general office cleaner, he could not do so full-time based on his testimony that he could stand or walk four hours per day. The ALJ should have followed up on this discrepancy between the facts in the hypothetical and the vocational expert's response before finding Shelltrack unqualifiedly capable of unskilled medium work.

The ALJ's questions further assumed an individual with no loss of memory who could follow and carry out oral instructions. Four of Shelltrack's acquaintances, in response to Social Security Administration questionnaires, variously described Shelltrack as forgetful, easily mixed up, lacking comprehension, and requiring repeated explanations of instructions. The ALJ gave no reason for discrediting these reports, but apparently concluded Shelltrack suffers no memory loss or cognitive impairment. On remand, before such a finding is included in a hypothetical question, the record regarding Shelltrack's ability to understand and follow oral instructions should be more fully developed and express credibility findings should be made. *See Ludden v. Bowen,* 888 F.2d 1246, 1248 (8th Cir.1989).

Finally, the hypotheticals assumed that Shelltrack's alcoholism was in remission. Given Shelltrack's history of unsuccessful attempts to stop drinking, this assumption was more optimistic than evidence in the record warranted. On remand, careful inquiry should be made into Shelltrack's current use of alcohol and his prognosis for lasting sobriety before his alcoholism is assumed to be in remission for purposes of assessing his ability to perform substantial gainful activity.

## CONCLUSION

For the foregoing reasons, we reverse the order of the district court granting summary judgment to the Secretary. We remand this case to the district court with instructions to remand it to the Secretary

for further proceedings consistent with this opinion.