**James J. LUBINSKI, Appellant,**

v.

**Louis SULLIVAN, M.D., Secretary of Health and Human Services, Appellee.**

No. 91–1665.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1991.

Decided Dec. 24, 1991.

George H. Smith, Minneapolis, Minn., argued, for appellant.

Eric Schnaufer, Chicago, Ill., argued (Jerome G. Arnoild, Robert A. Small, Donna Morros Weinstein and Richard A. Urbin, on brief), for appellee.

Before BEAM, Circuit Judge, HEANEY, Senior Circuit Judge, and LOKEN, Circuit Judge.

BEAM, Circuit Judge.

James J. Lubinski appeals the decision of the district court affirming the final decision of the Secretary of Health and Human Services denying social security disability insurance benefits and supplemental security income (SSI) benefits. We affirm.

## I. BACKGROUND

Lubinski is a 49–year–old former truck driver. He completed the tenth grade in school but is now working toward a GED in a state program. He was last insured for disability benefits on September 30, 1985. He applied for disability insurance benefits on November 5, 1987, alleging that the onset of his disability was December 31, 1981. His application for SSI benefits was submitted on January 22, 1988. Lubinski claims that he has a painfully severe and chronic low back condition, high blood pressure controlled by medication and that he suffers from alcoholism.

Both applications were denied initially and upon reconsideration. Lubinski requested a hearing before an administrative law judge (ALJ) which hearing was conducted on September 9, 1988. The record, however, remained open for additional filings until April 1, 1989.

The ALJ on May 24, 1989, issued a decision that denied all benefits. The ALJ found that Lubinski suffered from degenerative disc disease of the lumbar spine, hypertension controlled by medication and alcohol addiction for which he had *not* lost voluntary control. The ALJ further determined that Lubinski maintained the residual functional capacity to engage in his past relevant work and, thus, that he was not disabled within the meaning of the Social Security Act. The Appeals Council affirmed and Lubinski appealed to the district court.

The district court referred motions for summary judgment filed by each party to a magistrate judge. The magistrate judge conducted a thorough examination of the administrative record and submitted a well-reasoned report and recommendation to the district court. The magistrate judge disagreed with the ALJ with regard to Lubinski's ability to return to past relevant work. The magistrate also recognized that the ALJ had failed to state that he placed the burden of proof on the government insofar as establishing the availability of jobs in the national economy that Lubinski could perform with his limitations. Nonetheless, the magistrate found that the evidence so strongly supported a finding that Lubinski could do light or medium work that he recommended affirmance of the denial of benefits. The district court, upon de novo review, adopted, over the objections of Lubinski, the recommendations of the magistrate judge. This, of course, resulted in a grant of summary judgment for the Secretary affirming the decision to deny benefits. We agree with this decision.

## II. DISCUSSION

Plaintiff was born on December 4, 1941. He is divorced and has six children. His past work as a truck driver required him to travel over a five state area. In a vocational report to Social Security, plaintiff stated that his work involved heaving, lifting and pushing in the delivery of appliances, boilers, large pieces of furniture and, later, one-thousand-pound rolls of paper. The evidence indicated that his past relevant work as a truck driver required him to regularly

lift fifty pounds and to occasionally lift one hundred pounds. The ALJ found, instead, that Lubinski had the capacity to regularly lift twenty-five pounds and occasionally lift fifty pounds. The magistrate judge was correct, therefore, in recommending reversal of the past relevant work conclusion reached by the ALJ.

The low back problem, by itself, clearly does not, from the evidence, disable Lubinski to the extent that he is unable to perform any jobs in the national economy. It is the combination of low back trouble and alcoholism which we must consider. The Secretary has the burden of proving that Lubinski, with his multiple problems, can perform other work, *Pope v. Bowen*, 886 F.2d 1038, 1040 (8th Cir.1989), and the ALJ usually must acknowledge this burden, *id.*

We determine that the findings and conclusions of the magistrate judge and the district court relating to degenerative disc disease and controlled hypertension are more than sufficient for our purposes here. We will, therefore, consider in detail only the evidence of alcohol addiction and its control, if any, by Lubinski.

■ At the outset, we recognize that the ALJ failed to acknowledge the *Pope* burden of proof. Failure to recognize the source of the burden is error unless the evidence is strong enough to support the outcome despite the lapse. *Id.* We find that the exception applies. The evidence was sufficient.

We agree with the ALJ, the magistrate judge and the district judge that Lubinski is addicted to alcohol. The total test, however, is not addiction alone. It is addiction coupled with a loss of the ability to voluntarily control the use of the substance. *Adams v. Weinberger*, 548 F.2d 239, 244 (8th Cir.1977). And, the lack of control, if any, must be considered in the context of the inability to engage in substantial gainful activity. *Id.* at 243.

The record establishes that Lubinski, at earlier times not particularly relevant to our inquiry, was addicted to alcohol and was out of control in its use. Prior to 1976, he drank at least one quart of brandy each day. This led, among other things, to divorce and unemployment. Lubinski told James F. Kegel, M.D., on March 31, 1975, that he was greatly depressed at the separation from his wife and that she "will not take [me] back if [I do] not quit" drinking. Administrative Record at 160. Even with this onerous consequence at hand, his drinking continued. Later, he recounted that because of his drinking, his two daughters were married without his being invited to the weddings and that they had babies which he did not find out about until many months later. *Id.* at 129. In 1975, however, he entered a drug dependency program at St. Mary's Hospital in Minneapolis, *id.* at 216, and drank nothing for one and one-half years after completing the treatment, *id.* at 51. He has also totally quit drinking for five or six months at a time on four or five different occasions since that time. *Id.* at 52. Although he was charged or convicted of driving while being intoxicated (DWI) several times, he stated at the time of the 1988 hearing that he had not had any DWI's in about ten years. Apparently none of the DWI's occurred while Lubinski was on the job because he testified that he "never drank on a job," and the evidence in the record is not to the contrary. *Id.* at 46–47. He did admit, however, that tardiness and absenteeism resulting from drinking binges resulted in his termination from various work assignments. *Id.* at 65. Lubinski testified that since 1980 to 1981 he does not "drink during the week," *id.* at 48, his drinking being confined to the weekend, *id.* On the other hand, he did admit that in early 1988, he would stop in bars to see friends during the "happy hour" and they would buy him drinks. *Id.* at 49. He stated that he quit this after a short period of time because he did not have money to reciprocate. *Id.* To sum up, Lubinski testified:

Q: [ALJ] Would you say you have a serious drinking problem now?

A: [Lubinski] No.

Q: How long has it been since you've had a serious drinking problem?

A: I'd say when I was getting divorced there and—

Q: When was that?

A: —and after that—

Q: When did you get divorced?

A: '76. That's when I got out of treatment.

*Id.* at 51.

It may be argued that Lubinski tends to minimize his problems with alcohol and that he contradicts himself on how much control he has over the timing and amount of alcohol use. For instance, on February 28, 1989, Lubinski told Sunanda Apte–Kakade, M.D., according to a medical report, that he had not had any drinks for the past six months. *Id.* at 211. Nine days later, Gary L. Fischler, Ph.D., dictated a report in which he stated that Lubinski told him, during a March 2 evaluation, that he drinks two beers a week "just to say hi to someone in a bar." *Id.* at 216. However, he also told Dr. Fischler that "he does not drink because he cannot afford to" and he denied to Fischler that he had significantly abused alcohol "in the last several years." *Id.* Given the possible variation in the framing of the questions, these answers seem to be generally consistent with his hearing testimony given under oath. In any event, the ALJ's conclusions on alcohol addiction and its control are supported by substantial evidence in the record as a whole, as required by our cases.

Finally, Lubinski is critical of the four hypothetical questions propounded to the vocational expert. The burden was on the Secretary to establish, through the vocational expert, that there are jobs in the national economy that Lubinski is capable of performing. It is true that a vocational expert's response to a hypothetical question provides substantial evidence only where the hypothetical question sets forth with reasonable precision the claimant's impairments. *See Jelinek v. Bowen,* 870 F.2d 457, 461 (8th Cir.1989). The hypothetical questions in this case met the *Jelinek* test. There can be no dispute that the questions assumed physical disabilities and a pattern of alcohol consumption consistent with the hearing record. The questions were, in fact, framed as favorably to Lubinski as was possible from the hearing evidence. *See* Administrative Record at 72–73. The question remains, was there other evidence in the record as a whole, inconsistent with the hearing record, that should have been included? We think not. If anything, the hypothetical question overstates, in Lubinski's favor, the deleterious effects of his alcohol consumption shown by the record as a whole. We have examined, as we must, the entire record and we find nothing that presents a more damaging picture of Lubinski's alcohol consumption and control than that information included in the hypothetical questions. While the inquiries might have included things like his heavy drinking prior to 1976, his discontinuance of visits to happy hours because he had no money to buy his rounds of drink and speculation on his optimistic frame of mind when it comes to control of the quantity and timing of alcohol intake, our cases do not and should not require such particularization or theorization, notwithstanding *Jelinek.* In any event, the early drinking was included when the ALJ hypothetically directed the vocational expert to take into account "the pattern [of drinking] that [Lubinski] described [at the hearing] today." *Id.* at 72. Obviously the expert had heard Lubinski and was familiar with his abundant testimony with regard to his pre- and post–1976 drinking. Accordingly, we hold that the evidence adduced with regard to alternative employment was sufficient.

### III. CONCLUSION

The findings and conclusions of the ALJ, with the one exception noted, are supported by substantial evidence in the record as a whole. The final order of the district court is, accordingly, correct and we affirm.

HEANEY, Senior Circuit Judge, dissenting.

James L. Lubinski has been an alcoholic for many years. He started drinking in high school. By 1975, his chronic alcoholism was already of "some years duration," and although he underwent chemical dependency treatment that year, Lubinski made "very minimal progress while in treatment." Lubinski stopped attending Alcoholics Anonymous soon thereafter and

has not been enrolled in it or a similar program since. Lubinski lost every job he held from 1976 to 1981 because of his drinking, and has not had a steady job since 1981. Lubinski has been convicted of drunk driving at least seven times, most recently in 1978. Lubinski received treatment at the Hennepin County Detox Center twelve times from 1977 through 1981. As recently as November 1987, Lubinski reported that he had ten drinks a day, passed out once a week, and drank to get drunk. Although Lubinski says that he has stopped drinking on occasion, substantial evidence in the record suggests that Lubinski either starts drinking again after a short time, or that he has never really stopped.

Simply put, Lubinski was not able to control his drinking in the more distant past. It is questionable whether he has controlled it in the recent past or whether he can control it in the future. Given this, and the ALJ's failure to shift the burden of proof to the Secretary, we should remand this case for another hearing.

### I.

As the court recognizes, the ALJ erred when he (1) concluded that Lubinski could return to his former job as a truck driver, and (2) failed to acknowledge that the Secretary had the burden of proving that Lubinski could still perform other jobs in the national economy. We ordinarily reverse and remand when the ALJ has failed to recognize the shifting burden of proof, "except in those rare instances where the outcome would be clear regardless of who shoulders the burden of proof." *Bradshaw v. Heckler*, 810 F.2d 786, 789 (8th Cir.1987). This is not one of those "rare" cases. As I will demonstrate below, the evidence is not entirely one-sided, and a proper allocation of the burden could have changed the outcome, particularly with respect to the period before April 1, 1988.

It is undisputed that Lubinski is an alcoholic; the only question is whether Lubinski has "lost self-control to the point of being 'impotent to seek and use means of

rehabilitation' " and whether "his disability is encompassed by the Social Security Act." *Metcalf v. Heckler*, 800 F.2d 793, 796 (8th Cir.1986) (quoting *Adams v. Weinberger*, 548 F.2d 239, 245 (8th Cir.1977)). The court believes, as I do, that Lubinski was unable to control his drinking around the time his marriage dissolved. *See ante* at 216. Unlike the court, however, I believe that significant evidence indicates that Lubinski was unable to control his drinking after his 1981 onset date and well into the time for which he was eligible to receive benefits:

● In 1982, the Hennepin County District Court found Lubinski had been suffering from alcoholism since 1975 and canceled the support arrears Lubinski owed to his ex-wife.

● That same year, Lubinski was treated at the Hennepin County Medical Center emergency room for high blood pressure. At this time Lubinski said he drank ten to twelve shots of liquor and four to five beers a day on weekends. He refused to consider in-patient treatment for his drinking problem.

● In 1983, Lubinski was drinking at least a case of beer a week and a quart of brandy each weekend. Lubinski admitted in February and July 1983 that alcohol was still causing problems for him, but he remained reluctant to enter a treatment program.

● In early 1985, Lubinski complained of stomach problems due to his drinking; although he stated several times that he was trying to cut down, he acknowledged that his friends thought he was still drinking.

● In March 1985, Lubinski told a doctor he was trying to drink less during Lent, but the doctor noted that Lubinski still had "7 to 8 drinking episodes in the last few weeks." Medical notes from two months later state that Lubinski continued to drink.

If found disabled, Lubinski could receive retroactive benefits beginning November 5, 1986.[1] The information concerning Lubin-

---

1. We may award retroactive disability benefits

only for the twelve months prior to the filing of

ski's condition after that date is thus particularly important. I am puzzled, therefore, by the court's failure to even acknowledge the following facts that suggest Lubinski's heavy drinking was out of control *after* November 5, 1986:

● In February 1987, a doctor noted Lubinski's continuing problems with alcoholism and hypertension. Lubinski testified that he had four to six drinks a day during this time and as a result was having stomach problems.

● On April 16, 1987, Lubinski told his doctor that he had stopped drinking as of April 12, 1987, and that his blood pressure had been under much better control. Lubinski, as before,[2] was unable to stay on the wagon: he started drinking again three or four months later, consuming four to six drinks a day.

● On November 22, 1987, Lubinski told the Minnesota Department of Jobs and Training that he had ten alcoholic drinks a day, mainly brandy and beer, that he passed out from drinking about once a week, and that he occasionally drank just to get drunk.

● Lubinski testified at the hearing that he was "drinking pretty much" until five months before the September 1988 hearing, which would be April 1988.

I cannot see how someone who admits to having ten drinks a day, who admits to passing out once a week, who admits to drinking to get drunk, and who refuses to seek treatment in the face of serious health consequences can be viewed as having controlled his drinking.

At the very least, the above facts demonstrate that the evidence is conflicting about the extent to which Lubinski has controlled his drinking. Under the law of our circuit, this requires a remand, yet the court refuses to order a remand. I can only conclude that the court, like the ALJ, has evaluated Lubinski's ability to control his drinking *throughout* the disability period based only on Lubinski's apparent situation at the time of the hearing. As our court has made clear, however, disability is not an "all-or-nothing" proposition; an applicant may be entitled to benefits for one portion of a benefit claim period but not another. *See Van Horn*, 717 F.2d at 1200; *see also Atkinson v. Bowen*, 864 F.2d 67, 71 (8th Cir.1988). The Secretary frequently has awarded such a "closed period" disability benefit. *See, e.g., Ness v. Sullivan*, 904 F.2d 432, 434–35 (8th Cir.1990) (Secretary awarded closed period award; case remanded to determine if closed period should be extended); *Woods v. Bowen*, 854 F.2d 288, 290 (8th Cir.1988) (modifying closed period award). Given Lubinski's situation prior to April 1, 1988, this case should be remanded so that the ALJ can consider the possibility of awarding benefits to Lubinski for a closed period from November 5, 1986 to April 1, 1988.

## II.

I agree with the court that some evidence suggests that Lubinski began to control his alcoholism in April 1988. Lubinski underwent an alcoholism evaluation at that time, suggesting a possible change in his longstanding pattern of failing to confront or do anything about his alcohol problem. Lubinski testified that he stopped drinking on weekdays around June 1988, but that he continued to drink beer on the weekends as of the hearing date. Lubinski also testified at the September 1988 hearing that he did not think he had a serious drinking problem and stated he had cut down on his drinking because he lacked money and had stomach problems. Less than six months later, in February 1989, Lubinski told Dr. Apte–Kakade that he "hadn't had any drinks for the last six months." And, according to Dr. Fischler, a consulting psychologist, Lubinski denied significant alcohol abuse in the "last several years."

an application. 42 U.S.C. § 423(b) (1988); *Van Horn v. Heckler*, 717 F.2d 1196, 1200 (8th Cir. 1983). Because Lubinski filed his application for disability insurance benefits on November 5, 1987, he is eligible for benefits only from November 5, 1986.

2. According to Lubinski, this was not the first time stomach and other problems led him to quit drinking for a period of months, only to go back drinking again.

The more plausible interpretation of the evidence, however, is that Lubinski's testimony regarding his drinking is not reliable, perhaps due to denial or a faulty memory. Lubinski has a history of minimizing or denying his problems with alcohol, and his recent optimistic statements about his control of alcohol contradict each other. *Cf. Shelltrack v. Sullivan*, 938 F.2d 894, 897 (8th Cir.1991). For example, Lubinski told Dr. Fischler that he had not significantly abused alcohol "in the last several years," *see id.*, yet less than sixteen months earlier, Lubinski admitted to having ten drinks a day, drinking to get drunk, and passing out once a week. Although Lubinski may think otherwise, I consider that kind of drinking to constitute significant alcohol abuse "in the last several years." And no matter what spin the court seeks to put on Lubinski's statements to Dr. Apte–Kakade, *see ante* at 216–17, Lubinski's statement to Dr. Apte–Kakade claiming total sobriety for the previous six months flatly contradicts his statements at the September hearing in which he admitted that he still drank. It also contradicts the statements Lubinski made two days later to Dr. Fischler when he said that he drank at his mother's birthday party "last week" and that he drank two beers a week "just to say hi to someone in a bar." Unlike the court, I do not see how the discrepancies among Lubinski's statements at the hearing, to Dr. Apte–Kakade, and to Dr. Fischler could result from a "possible variation in the framing of the questions" that Dr. Fischler asked Lubinski. *See ante* at 217.

One other point merits more attention than given by the court or the ALJ. As the court notes, the lack of control over alcohol must be considered in the context of the inability to engage in significant gainful activity. If we were to remand this case with directions to apply the proper burden of proof, the Secretary might well award benefits based on evidence that strongly suggests that Lubinski will start drinking in a work situation. All of the

evidence dating from when Lubinski last held a steady job (1976–1981) indicates that Lubinski drinks when subjected to the stresses of a work situation. More recently, Dr. Fischler concluded that Lubinski had an alcohol dependence in *partial* remission. He noted Lubinski's strengths and weaknesses, including problems with Lubinski's long-term and intermediate memory, and stated that these problems were most likely a result of long-term alcohol use. Fischler had Lubinski take a Minnesota Multiphasic Personality Inventory (MMPI) test. The profile that resulted was similar to those of people who are in "direct conflict with social values" and whose behavior is "likely to involve excessive use of alcohol, arrests, job loss, and family discord associated with drinking." Fischler concluded that Lubinski's drinking and pain would increase under increased stress or pressure. All of these facts suggest that Lubinski's alcoholism, in combination with his back pain, may still be disabling in the "sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc). Given the conflict in the post-April 1988 evidence, we should remand this case for another hearing.

### III.

Finally, we should remand this case because the ALJ posed hypothetical questions to the vocational expert that did not precisely and fully set forth all of Lubinski's impairments. Here, the ALJ asked the vocational expert four hypotheticals. The first and second hypotheticals both assumed that Lubinski's drinking would occur between 5:00 p.m. and 7:00 p.m., that Lubinski would have no more than four to six drinks during that time, that for as much as a four to six-month period, Lubinski would drink nothing during the week and three to four beers a day on weekends, and that Lubinski would not have DWIs or blackouts.[3] The third hypothetical as-

3. The only difference between the first and second hypotheticals is that the first assumed Lubinski would be capable of medium work, while the second assumed Lubinski could do only light work.

sumed the above, except that Lubinski had light work capabilities and could control the time of day he drank. The fourth hypothetical was the same as the third, except that it assumed Lubinski would have to change positions every sixty to ninety minutes. The vocational expert answered the first hypothetical by stating that Lubinski could return to his past work, and answered the remaining three by stating that despite his alcohol use, Lubinski could perform many jobs requiring light unskilled labor which exist in substantial numbers in Minnesota.

The court states that these hypotheticals were favorable to Lubinski, but the hypotheticals suffer from the same defect as mentioned before: they were based only on Lubinski's apparent situation at the time of the hearing, and thus understate the extent of Lubinski's alcohol use and its effects. A vocational expert's opinion must be based on more than just the claimant's testimony at the hearing, which here limited Lubinski's drinking to four to six drinks a day. Rather, the opinion should be based on the claimant's condition throughout the disability period as gleaned from the entire record. *See Walker v. Bowen,* 889 F.2d 47, 51 (4th Cir.1989). As late as November 1987, Lubinski admitted to having *ten* drinks a day, passing out once a week, and drinking to get drunk. The hypothetical questions did not acknowledge this. Moreover, the assumption that Lubinski can control his drinking enough to hold down a job is questionable, based as it is on Lubinski's hopeful testimony. *See Shelltrack,* 938 F.2d at 897–98 (hypothetical questions improperly assumed that claimant's alcoholism was in remission; ALJ erred by relying on claimant's testimony that alcoholism was no longer a problem for him where record demonstrated that claimant had long been unable to stop drinking and had repeatedly minimized or denied his drinking problems). Lubinski's drinking may well have temporarily tapered off since April 1988 because Lubinski lacked the money to sustain his habit. The record, however, establishes that Lubinski drinks if he has access to money, whether gained through earnings or through friends who buy him drinks, and has a record of losing jobs due to his drinking. Again, the hypothetical questions did not include these facts.

## IV.

Perhaps the court is concerned that by remanding this case, we would "reward" Lubinski's alcoholism and encourage him to drink up his benefits to remain on the social security rolls. If Lubinski is awarded benefits on remand, however, his stay on the social security rolls might be limited. This is because the Secretary can condition continued payment of those benefits upon Lubinski's undertaking of reasonable efforts to treat his alcoholism. Two things could then happen. If the treatment were successful, Lubinski would no longer be disabled and would thus be ineligible for disability insurance benefits. On the other hand, if Lubinski is unwilling to enter treatment for his alcoholism, the Secretary could stop paying him benefits.

In any event, the evidence in this case is far from one-sided about Lubinski's disability from alcoholism, particularly for the period before April 1, 1988. Accordingly, the case law in this circuit requires a remand. I dissent.