Edward THOMPSON, Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health and Human Services,
Appellee.

No. 91–1785.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1991.

Decided Feb. 27, 1992.

Anthony William Bartels, Jonesboro,
Ark., argued, for appellant.

Rebecca L. Rome, Dallas, Tex., argued
(Charles A. Banks, Gayla Fuller and Karen
J. Sharp, on the brief), for appellee.

Before LAY,* Chief Judge, WOLLMAN
and HANSEN, Circuit Judges.

---

* The Honorable Donald P. Lay was Chief Judge
of the United States Court of Appeals for the
Eighth Circuit at the time this case was sub-
mitted and took senior status on January 7,
1992, before the opinion was filed.

HANSEN, Circuit Judge.

Edward Thompson appeals from the district court's affirmance of the Secretary of Health and Human Services' denial of Thompson's application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383c (1988). We reverse and remand.

## I. BACKGROUND

Thompson, age fifty-one, has a high school education. He has past relevant work experience as a concrete finisher, laborer, mechanic's helper, and messenger. He filed an application for SSI benefits on February 14, 1989, alleging disability beginning October 20, 1986, based on poor vision, decayed teeth, liver damage, and alcohol abuse.

Thompson has been drinking since age eighteen or nineteen and has been a "problem drinker" since his early twenties., Although his alcohol usage varies, there is evidence in the record that his usage is considerable. Thompson has been arrested twenty-two times for driving while intoxicated (DWI) and hundreds of times for public intoxication. He has attempted and failed several rehabilitation programs. In 1960 he was committed by his father to the Arkansas state hospital for three days for alcoholism. He entered Veterans Administration (VA) treatment programs in Illinois in 1977 and 1979 and did not complete either program. Also in 1979 Thompson was treated for a stab wound to the face and has lost some sensation in the left side of his face as a result of that wound.

On April 9, 1986, Thompson was admitted to a VA hospital in North Little Rock, Arkansas for a detoxification and rehabilitation program. His primary diagnosis was "[a]lcohol dependency, continuous." He stated that prior to his admission, he was drinking two pints of vodka daily. He received an irregular discharge on May 4, 1986, when he did not return from a weekend pass. The report from that hospitalization noted that "[t]he prognosis for long term rehabilitation is extremely guarded." Thompson was again admitted to the North

Little Rock VA hospital detoxification and rehabilitation program on September 2, 1986. His primary diagnosis was "[r]ehabilitation for alcohol dependence." He stated that he had resumed drinking in June of 1986, and was drinking approximately two pints of vodka daily. He further stated that he had been arrested for a DWI offense between his first and second admissions to the program. He received an irregular discharge on September 25, 1986, when he did not return from an authorized absence following his sister's death. The report from this hospitalization noted that "[t]he prognosis for long term rehabilitation is poor." On December 30, 1986, Thompson was again admitted to the VA program and again received a primary diagnosis of "[a]lcohol rehabilitation" and a secondary diagnosis of "[a]lcohol dependency, continuous." The report from this hospitalization indicates that Thompson stated that he resumed drinking less than twenty-four hours after leaving the previous program and had been drinking an average of five pints of vodka per day since October. He was given an irregular discharge on February 5, 1987, when he left the program one day earlier than his planned discharge date. On March 31, 1987, Thompson was again admitted to the VA program. The primary diagnosis was "[a]lcohol dependence, continuous." He successfully completed the inpatient portion of that program, but did not return for weekly outpatient therapy. The report from that program indicates that Thompson stated that he had resumed drinking three or four weeks earlier and was consuming approximately two and a half pints of vodka daily. The reports from his four hospitalizations at the North Little Rock VA hospital all indicate that while Thompson detoxified successfully, he had great difficulty with rehabilitation.

On May 11, 1989, Thompson was evaluated by psychologist Don Birmingham, Ph.D, at the request of the Secretary. Dr. Birmingham offers a diagnosis of "[a]lcohol dependence, continuous" and notes that "[t]he prognosis is poor. He is a chronic alcoholic and it is no[t] likely that he will change his drinking behavior." Dr. Bir-

mingham also noted that "Mr. Thompson functions well when not under the influence of alcohol. He has the ability to structure his occupational and social pursuits in an effective manner if motivated to do so." Dr. Birmingham found no evidence suggestive of organic involvement.

On May 16, 1989, Thompson underwent a general physical examination by Timothy Fisher, D.O., also apparently at the request of the Secretary. Dr. Fisher diagnosed alcohol abuse, tobacco abuse, and hepatomegaly (enlargement of the liver) secondary to ethanol abuse. Dr. Fisher found Thompson's uncorrected vision to be good (20/25 in the right eye and 20/30 in the left eye). Dr. Fisher concluded that Thompson was "able to sit, stand, move around, lift, carry, handle objects, hear & speak."

After Thompson's claim was denied initially and upon reconsideration, he requested and received a hearing before an administrative law judge (ALJ). Thompson appeared personally and with counsel at the scheduled February 14, 1990 hearing. Thompson was the only witness to testify.

At the hearing, Thompson testified that he suffers from seizures, shortness of breath, pain in his right leg, difficulty sleeping, twitching in his left eye as a result of his stab wound, headaches, back pain, and chronic constipation. Thompson testified that he takes Anacin periodically for pain and Enduron (prescribed) for hypertension. His seizures occur approximately every two weeks or less. He also testified that he occasionally suffers from the "shakes" and hallucinations. Thompson lives with his mother. His daily activities include preparing meals, watching television, reading the newspaper, visiting neighbors, and playing cards. He usually takes a nap for one and a half hours in the early afternoon. He testified that he is unable to push or pull more than five pounds on a repetitive basis, is unable to squat, and has difficulty kneeling and bending. He testified that he could sit for an hour, stand for ten to fifteen minutes, and walk for thirty minutes. He has attended Alcoholic Anonymous meetings in the past but had not attended a meeting for a long time. He testified that his last drink had been approximately two weeks before the hearing. Dr. Birmingham's report suggests that Thompson did not participate in any treatment programs after early 1987. Thompson did tell Dr. Birmingham that he had attempted to reenter the VA program in April of 1989, but he was turned away because no space was available.

The ALJ concluded that Thompson has a "severe alcohol dependency," but that he does not have an impairment or combination of impairments listed in or equivalent to one listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found Thompson's allegations of disabling pain, discomfort, restrictions, and limitations to be "not credible to the extent alleged." The ALJ concluded that Thompson "has the residual functional capacity to perform work-related activities except for work involving work at unprotected heights, or around moving machinery." The ALJ further concluded that Thompson could perform his past relevant work as a concrete finisher or laborer. Accordingly, the ALJ concluded that Thompson was not suffering from a disability as defined in the Social Security Act and was not entitled to SSI benefits.

Thompson requested review by the Appeals Council and submitted additional evidence in the form of reports from Dr. W. Gerald Fowler and Dr. Ronald Gore. Dr. Fowler diagnosed "[a]lcohol dependence with DT, alcoholic blackout, and alcoholic liver disease," among other conditions. Dr. Gore's report indicates that Thompson suffers from advanced periodontal disease. The Appeals Council found that these reports did not constitute new and material information which would warrant a change in the ALJ's decision, primarily because they merely showed a worsening condition after the hearing date, and denied review. Thompson then filed for judicial review. The district court found the Secretary's decision to be supported by substantial evidence and granted summary judgment for the Secretary. Thompson now appeals to this court.

## II. DISCUSSION

[A]lcoholism alone, or in combination with other impairments, can be disabling.... [I]n order to establish a disability predicated on alcoholism, the claimant must show: (1) that he has lost self-control to the point of being 'impotent to seek and use means of rehabilitation,' and (2) that his disability is encompassed by the Act. '[A] finding of an ability to control alcoholism cannot rest on claimant's testimony alone.'

*Metcalf v. Heckler,* 800 F.2d 793, 796 (8th Cir.1986) (citations omitted); *Shelltrack v. Sullivan,* 938 F.2d 894, 897 (8th Cir.1991).

 The ALJ noted Dr. Birmingham's opinion that claimant functions well when not under the influence of alcohol and has an ability to structure his occupational and social pursuits appropriately when motivated to do so. The ALJ stated that "[t]he claimant has been hospitalized on numerous occasions for alcohol dependence and detoxified without difficulty. There is no showing that the claimant has lost the ability to control his addiction."

 The ALJ overlooks the fact that while Thompson has sought and received help on numerous occasions, he generally fails to complete the rehabilitation program and quickly reverts to the use of alcohol. The ALJ relies primarily on Dr. Birmingham's report. However, Dr. Birmingham is a consulting psychologist who apparently saw Thompson only once. The opinion of a consulting physician who examined the claimant once generally does not constitute substantial evidence on the record as a whole, particularly when contradicted by other evidence. *See Henderson v. Sullivan,* 930 F.2d 19, 21 (8th Cir.1991) (citing cases). The facts of this matter are very similar to the facts of *Shelltrack,* 938 F.2d at 897, where this court found that a long-standing pattern of attempted treatment and failure could meet the loss of self-control element.[1] In relying on Dr. Birmingham's opinion to the exclusion of the evidence of record that Thompson cannot successfully complete rehabilitation programs, the ALJ erred. Although Thomp-

son does *seek* means of rehabilitation, he has lost self-control to the extent of being unable to *use* means of rehabilitation.

 The second part of the test, "that his disability is encompassed by the Act," must also be met. *See Metcalf,* 800 F.2d at 796. "[T]he mere presence of alcoholism is not necessarily disabling." *Cruse v. Bowen,* 867 F.2d 1183, 1186 (8th Cir.1989). In other words, Thompson's alcoholism, alone or in combination with other impairments, must render Thompson unable to engage in any substantial gainful employment. Thompson argues that he meets various parts of the Listings of Impairments set forth in 20 C.F.R., Part 404, Subpart P, Appendix 1. Listing § 12.09 covers substance addiction disorders and requires the claimant to meet one of several specified listings on behavioral and physical disorders. Thompson asserts that he meets Listings § 12.02 on organic mental disorders, § 12.04 on affective disorders, and § 12.08 on personality disorders. He relies primarily on Dr. Birmingham's report and consulting psychiatrist Dr. Fowler's report. Where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate. *See, e.g., Fowler v. Bowen,* 866 F.2d 249, 253 (8th Cir.1989). After reviewing this matter, we cannot conclude that the evidence of record overwhelmingly supports a finding that Thompson meets one of these listings. However, on remand the ALJ should consider whether Thompson does, in fact, meet one of these listings.

Thompson next makes several challenges to the ALJ's conclusion that Thompson has the residual functional capacity to perform work except at unprotected heights or near moving machinery and could perform his past relevant work as a concrete finisher or laborer. After reviewing this matter, we are left with the firm conviction that the ALJ improperly ignored the evidence of the effect of Thompson's alcoholism on his residual functional capacity. However, we cannot conclude that the evidence of record

---

1. We note that *Shelltrack* was decided after the order of the district court below was entered.

overwhelmingly supports a finding that Thompson lacks the residual functional capacity to perform his past relevant work or other work which exists in significant numbers in the national economy.

On remand, the ALJ should examine the extent and degree of Thompson's alcoholism and alcohol-related impairments; the effect of his alcoholism on him physically and psychologically, both alone and in combination with his other impairments; the extent of any organ damage; and the effect of Thompson's alcoholism on his ability to resolve his problems; along with all other factors relevant to the determination of whether Thompson is "disabled" under Title XVI of the Social Security Act. *See Shelltrack,* 938 F.2d at 898.

## III. CONCLUSION

For the foregoing reasons, we reverse the order of the district court granting summary judgment to the Secretary. We remand this case to the district court with instructions to remand this matter to the Secretary for further proceedings consistent with this opinion.