**Christopher A. PETERMAN, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

No. C93–0269.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

Nov. 5, 1996.

1. The defendant has been changed from Donna E. Shalala, Secretary of Health and Human Services to Shirley S. Chater, Commissioner of Social Security in accordance with the Social Secu-

rity Independence and Program Improvements    Act of 1994, P.L. 103–296 § 106(d).

Jeffrey P. Berg, Cedar Rapids, IA, for plaintiff.

Michael R. Fry, Assistant Regional Counsel, Department of Health & Human Services, Washington, DC, Ana Maria Martel, United States Attorney's Office, Cedar Rapids, IA, for defendant.

## OPINION and ORDER

MELLOY, Chief Judge.

This matter is before the court on the plaintiff, Christopher Peterman's, complaint (doc. # 3), filed November 16, 1993, appealing the Social Security Commission's denial of his applications for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and for supplemental security income (SSI) benefits under Title XVI of the act, 42 U.S.C. §§ 1381 *et seq.* Mr. Peterman's applications for benefits, filed November 20, 1992, allege the inability to work since October 15, 1990. These applications were denied initially and on reconsideration. Following a hearing held on February 23, 1993, an Administrative Law Judge (ALJ) found the plaintiff not disabled within the meaning of the Social Security Act. Because the Social Security Appeals Council denied the plaintiff's request for review of the ALJ's decision, the ALJ's decision and findings stand as the final decision of the Commission. The plaintiff requests reversal of the ALJ's decision and payment of back benefits.

### Background

The plaintiff, born November 5, 1969, completed high school in a special education program at the age of 21. He also began but did not complete vocational training in small engine repair. In the past, he has performed work as a tire changer, pizza deliverer, brush clearing laborer, glass installer, and bus boy. He left his pizza delivery and laborer jobs for reasons unrelated to the physical or mental demands of the work, however, he was terminated from four jobs because he could not work at an adequate pace. The plaintiff alleges disability based on a variety of conditions, most of which he claims were caused by complications during birth. His conditions include a history of left leg weakness, left ulnar neuropathy, chronically dislocated left elbow, dysarthric speech, right peripheral palsy with incomplete closure of the right eye, borderline intellect with various IQ scores ranging from 98 to 72, attention deficit disorder, learning disability, no hearing in his right ear, club left foot, antalgic gait on the left, rapid alternating movements impaired to about 40% of normal in the left arm and leg, developmental dyslexia, and a limited grip strength in the left hand.

The record contains the results of three separate IQ tests. The earliest test on rec-

ord was performed in 1979. This test resulted in scores of 87 verbal, 100 performance and 92 full scale. In October 1989, the plaintiff underwent a psychological evaluation in conjunction with an earlier application for Social Security benefits in which his IQ was measured as 85 verbal, 98 performance with a full scale score of 89. In 1993, however, at a second psychological examination, his scores had dropped to 72 verbal, 77 performance with a full scale score of 73. There was no explanation given for the decline in his scores.

### Determination of Disability

Determination of a claimant's disability involves a five step evaluative process. 20 C.F.R. § 404.1520(a–f). The plaintiff alleges error at steps three and five. At the third step, if the medical evidence of a combination of the claimant's impairments meet or equal the requirements of one of the impairments listed in the regulations, that claimant will be found disabled. § 404.1520(d). The plaintiff alleges that the ALJ failed to properly consider, consistent with the requirements of the Social Security Programs Operations Manual ("POMS") § DI24515.056D1C, whether a combination of the plaintiff's impairments met or equaled the listed impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.05(C). At the fifth and final step of the analysis, the burden of proof shifts to the Social Security Commission to prove that there are a significant number of jobs in the national economy that a person of the same age, education, past work experience, and physical and mental residual functional capacity can perform. 20 C.F.R. § 404.1520(f). The ALJ determined that the Commission proved that the plaintiff can perform the requirements of work as a parking booth attendant, locker room attendant, cafeteria attendant, and gate tender, jobs that exist in significant numbers in the local and national economy. The plaintiff claims that the ALJ erred by omitting six particular functional restrictions from the hypothetical question posed to a vocational expert that he relied on in determining that the plaintiff can perform the requirements of work.

### Standard of Review

The Eighth Circuit has stated the standard of review for appeals from a denial of Social Security benefits as follows:

> On review, it is [a court's] duty to determine whether substantial evidence in the record as a whole supports the Secretary's decision. 42 U.S.C. @ 405(g) (1988); *Jeffery v. Secretary of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir.1988). As we have repeatedly noted, this standard of review involves more than a mere search for evidence supporting the Secretary's findings. *See, e.g., McMillian v. Schweiker*, 697 F.2d 215, 220 (8th Cir. 1983). [A court] must examine all of the evidence on the record, *Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir.1980), and take into account whatever fairly detracts from its weight. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951); *Tome v. Schweiker*, 724 F.2d 711, 713 (8th Cir. 1984).

*Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir.1991).

### Analysis

Although the ALJ generally accepted the plaintiff's description of his impairments, the ALJ found that a combination of those impairments do not meet or equal a listed impairment and that those impairments do not prevent the plaintiff from performing the requirements of work that exists in significant numbers in the national economy. The plaintiff alleges error in both of those conclusions. I address each one in turn.

█ The plaintiff alleges that the ALJ failed to properly consider whether a combination of the plaintiff's impairments met or equaled the listed impairment at 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.05(C). Under the impairment listed at 12.05(C), a claimant is considered disabled if the claimant has a full scale IQ of between 60 and 70 and, in addition, has another physical or mental impairment imposing additional and significant work-related limitation of function. The Social Security Programs Operations Manual ("POMS") § DI24515.056D1C provides fur-

ther guidance for the application of listing 12.05(C):

"[S]lightly higher IQ's (e.g., 70–75) in the presence of other physical or mental disorders that impose additional and significant work related limitation of function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another mental or physical impairment can be found."

Because the plaintiff scored a full scale IQ of 73, the plaintiff claims that the ALJ erred in finding that a combination of his impairments does not meet or equal a listed impairment.

Although the most recent IQ test results showed a full scale IQ of 73, two previous IQ tests resulted in full scale IQ scores of 92 and 89. There was no explanation in the record to account for the sharp drop in the IQ. Although the ALJ did accept the lower scores as a worst case scenario for the purposes of formulating his hypothetical question, the unexplained sharp drop between successive IQ tests supports the ALJ's finding that the plaintiff's condition did not meet or equal listed impairment 12.05(C).

▮ To meet its burden of proving that a claimant cannot perform substantial gainful activity, the Social Security Commission, as here, may rely on the testimony of a vocational expert. For a hypothetical question posed to a vocational expert to form the basis of an ALJ's findings, it must fully set forth the claimant's impairments. *Shelltrack v. Sullivan*, 938 F.2d 894, 898 (8th Cir.1991). The hypothetical question, however, need not set out every restriction suggested by the evidence. It is sufficient if it sets forth the impairments and limitations which are accepted as true by the ALJ. *Jenkins v. Bowen*, 861 F.2d 1083, 1086–87 (8th Cir.1988); *Roberts v. Heckler*, 783 F.2d 110 (8th Cir. 1985).

▮ The ALJ, in formulating the plaintiff's residual functional capacity, discounted the plaintiff's testimony regarding his physical limitations. The ALJ concluded:

... the undersigned finds the claimant's subjective complaints of disabling left leg weakness, left arm limited range of motion

and weakness, difficult speech, deafness in the right ear, lazy left eye, and diminished intellectual functioning not credible. They are inconsistent with: his level of treatment (he has not seen a doctor since 1989 except for consultative examinations in connection with his disability hearing and a psychological evaluation he and his attorney procured in connection with his upcoming disability hearing[)] and he takes no medications; the restrictions placed on the claimant by a consultative physician and consultative physical therapist, his activities of daily living which include working on small engines and driving cars and motorcycles; and his work history of insubstantial earnings and quitting two jobs in 1991 for reasons unrelated to any physical or mental impairments.

R. 18.

The ALJ's focus on the plaintiff's lack of treatment and medication is misplaced, as the majority of the plaintiff's impairments could not be improved through treatment or medication. Low intelligence and permanent physical deformities do not generally benefit from medical attention or medication. In addition, the record contains objective medical evidence that supports the plaintiff's claims. Dr. Ballard's examination revealed decreased elbow extension and wrist flexion and extension on the left compared to the right and decreased pinprick and two point discrimination in the fourth and fifth digits of the left hand. Results of an x-ray of the left elbow showed evidence of a dislocated radial head. Dr. Ballard also observed that the plaintiff had dysarthric speech, slightly wide-based stance with decreased ankle movement throughout his gait and a tendency toward inversion of the left foot, slightly wide-based gait, and atrophy of the legs. R. at 320–23. A consultative examination in 1992 with Ms. Sirotiak, a physical therapist, revealed that the plaintiff ambulated with a slight wide-based stance, was able to climb stairs with good technique, was unable to squat due to heel cord tightness bilaterally, had limited supination and pronation of the left forearm and was noted to have atrophy or diminished muscle development of the legs most pronounced in the left leg. The plaintiff was not

able to pick up coins without slight modification when full supination was required, as the plaintiff did not have this ability. The plaintiff's left middle, ring, and little fingers were not as developed or supple due to ulnar neuropathy, and his pinch grip in his left fingers was inferior to that of his right fingers. Ms. Sirotiak also noted that the plaintiff's speech was understandable if one listened closely and that he was able to hear adequately on a one-to-one basis. R. at 345–46.

■■■ The ALJ also found that the plaintiff's daily activities, which included some household chores, visiting with a girlfriend, motorcycling, boating, and tubing, and his ability to perform "self care" without difficulty belie the plaintiff's claims of disabling impairments. The ALJ did not explain how the plaintiff's performance of such activities made him able to perform the daily requirements of a job. More importantly, the pace and exertion level at which these activities are performed was not explored. Disability under the Social Security Act does not mean total disability or exclusion from all forms of human and social activity. See *Harris v. Secretary of the Dep't of Health and Human Servs.*, 959 F.2d 723, 726 (8th Cir.1992) (claimant's ability to cook, shop, clean, do laundry and visit friend does not constitute substantial evidence that claimant can engage in substantial gainful activity); *Jeffcoat v. Bowen,* 840 F.2d 592, 596 (8th Cir.1988).

Finally, the ALJ relies on the plaintiff's past work history of insubstantial earnings[2] and quitting two jobs in 1991 for reasons unrelated to any physical or mental impairments.[3] The ALJ fails to mention that the plaintiff was terminated from at least four jobs because he was unable to "keep up" and work at a pace sufficient to meet his employers' expectations. While the plaintiff's insubstantial earnings could be a sign of his lack of motivation to work, it could also indicate his inability to perform work that would provide him with higher income or the endurance to work more or longer hours.

■■■ The ALJ's finding that the plaintiff's subjective complaints of disabling left leg weakness, left arm limited range of motion and weakness, difficult speech, deafness in the right ear, lazy left eye, and diminished intellectual functioning were not credible is not based on substantial evidence in the record. In this case, the lack of medical attention and medication, the plaintiff's decisions to leave two jobs, and the plaintiff's daily activities are not so inconsistent with the plaintiff's testimony that they justify the ALJ's blanket finding of non-credibility. Thus, the ALJ should have considered plaintiff's testimony in forming the hypothetical to pose to the vocational expert.

The plaintiff claims that the ALJ erred by omitting six particular functional restrictions from the hypothetical question that the ALJ relied on in determining that the plaintiff can perform the requirements of work. The alleged omissions are:

(1). Limited to lifting 5 pounds with the left hand;

(2). limited to work that does not require constant standing or walking;

(3). limited in his ability to handle objects with the left hand;

(4). limited to performing jobs that do not require speaking as a job activity;

(5). limited short-term memory;

(6). limited by his need to work at a slower pace, 50% of average worker with constant supervision.

The hypothetical formulated by the ALJ did include some of the restrictions urged by the plaintiff. For example, the ALJ's inclusion of the restriction that the plaintiff has difficulty remembering and that his attention and concentration are limited to a mild to

---

**2.** It is ironic that the ALJ faults the plaintiff for performing jobs that produced "insubstantial earnings" when the jobs he found the plaintiff could perform would likely pay no more than minimum wage.

**3.** The plaintiff quit a job as a laborer to seek a more dependable job and quit as pizza delivery because the cost to keep his car running, which he needed to perform the work, exceeded his income from the job. Thus, the plaintiff's decisions to quit do not necessarily equate to lack of motivation to work, as they were economically sound.

moderate degree fairly encompasses the plaintiff's suggested restriction of having a limited short-term memory. The restriction that the plaintiff not be required to stand more than four hours in an eight hour work day meets the plaintiff's proffered restriction of not standing or walking constantly. The inclusion in the hypothetical of the plaintiff's need for "supervision and guidance in work settings" satisfies the plaintiff's request that a requirement of constant supervision be included in the hypothetical.

The ALJ failed, however, to include several relevant limitations in the hypothetical. One of the plaintiff's suggested restrictions was that lifting with the left arm be limited to five pounds. The hypothetical included a general lifting restriction of no more than thirty pounds and ten to fifteen pounds frequently. The medical evidence does not contradict the five pound restriction, as Dr. Ballard suggested a lifting restriction of five pounds. During the examination with Ms. Sirotiak, the plaintiff was found to be able to transfer, with both hands, a crate weighing five pounds from waist height to chair height several times with no difficulty. The plaintiff testified that he was able to lift approximately thirty pounds with both hands, but that he only used his left hand to steady the object he carries and he tries to do all lifting and manipulation with his right hand. R. at 46. Thus, the lifting restriction included by the ALJ was accurate, however, there is substantial evidence in the record to support the inclusion of the five pound lifting restriction for the left arm.

The Plaintiff also maintains that a limitation regarding his speaking ability should have been included in the hypothetical. Ms. Sirotiak found that the plaintiff's speech was understandable *if one listened closely.* Dr. Ballard diagnosed the plaintiff as slightly dysarthric[4] and recommended he not perform speaking as a job activity. While the ALJ appeared to have no difficulty communicating with the plaintiff, the hearing record is replete with instances where the transcriber was unable to understand the plaintiff. R. at

39, 41, 43, 50, 51, 55, 61, 64, and 65. The vocational expert opined that the jobs available for the plaintiff were not excessively noisy, however, "there is some background noise obviously if you're working in a parking booth. There may be some traffic noise nearby. Gate tender occasionally might have some noise.... Locker room I would say not—would not be excessive nor cafeteria although in a cafeteria you're going to have background noise in the form of customers and conversational noise." R. at 79. If the transcriber had difficulty understanding the plaintiff in a relatively quiet hearing room, one can reasonably assume that customers would have similar hearing difficulty in a workplace with noise. Thus, a speaking limitation should have been included in the hypothetical.

The ALJ's original hypothetical did not include a restriction that the plaintiff is limited to performing work at a speed of 50% to 60% of the average worker. When this additional restriction was presented to the vocational expert, he opined that the plaintiff would still be able to perform the jobs he had previously listed, however, the number of jobs available would be reduced.

In order to rely on a vocational expert's opinion, "the hypothetical question posed to a vocational expert must fully set forth a claimant's impairments." *Totz v. Sullivan,* 961 F.2d 727, 730 (8th Cir.1992) (citing *Shelltrack,* 938 F.2d at 898). If a hypothetical question does not include all of a claimant's impairments, limitations and restrictions, or is otherwise inadequate, a vocational expert's response cannot constitute substantial evidence to support a finding of no disability. See *id.; Greene v. Sullivan,* 923 F.2d 99, 101 (8th Cir.1991). Because the hypothetical posed to the vocational expert in this case failed to incorporate all of the plaintiff's physical limitations, it cannot serve as a basis for denying benefits to the plaintiff.

The inclusion of limitations on left-handed lifting, speaking, and reduced work speed in the plaintiff's residual functional capacity would clearly reduce the number of jobs

---

**4.** Dysarthria is the condition of having imperfect articulation of speech due to disturbances of muscular control which result from damage to

the central or peripheral nervous system. *Dorland's Illustrated Medical Dictionary* 481 (25th ed.1974).

available for the plaintiff. The vocational expert stated that the reduced work speed would decrease the number of positions available, but would not eliminate any of the jobs he cited. A similar or greater reduction can be expected when factoring in the speaking limitation, as the DOT definitions indicate all occupations named by the vocational expert require some degree of communication, and often the communication is essential to the successful performance of the job. Thus, I conclude that the Social Security Commission has failed to demonstrate that there are significant number of jobs in the national economy that the plaintiff can perform.

### Reversal

Ordinarily, where the Social Security Commission erroneously determines that a claimant can return to work, a court should remand for further consideration. *See Beeler v. Bowen,* 833 F.2d 124, 127 (8th Cir.1987) (citing *Gavin v. Heckler,* 811 F.2d 1195, 1201 (8th Cir.1987)). However, where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate. *See, e.g., Fowler v. Bowen,* 866 F.2d 249, 253 (8th Cir.1989); *Beeler,* 833 F.2d at 128; *Talbott v. Bowen,* 821 F.2d 511, 514 (8th Cir.1987); *Smith v. Heckler,* 735 F.2d 312, 318 (8th Cir.1984). In this case, the record overwhelmingly supports a disability finding. Accordingly, reversal of the Social Security Commission's decision is appropriate.

### Conclusion

The final decision of the Social Security Commission, denying Mr. Peterman's application for Social Security disability benefits, is not supported by substantial evidence on the record as a whole. Based on the physical and non-physical limitations that were improperly omitted, there are not a significant number of jobs in the national economy that the plaintiff can perform. The plaintiff is disabled.

Accordingly, **It Is Ordered:**

The decision of the Social Security Commission, denying the plaintiff, Christopher Peterman's, applications for Social Security benefits is reversed.