**Richard R. WIGG, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

**No. C 94–3072.**

United States District Court, N.D. Iowa, Central Division.

Nov. 1, 1995.

---

**1.** The function of the Secretary of Health and Human Services in social security cases has been

transferred to the Commissioner of Social Security effective March 31, 1995, pursuant to § 6 of the Social Security Independence and Program Improvements Act of 1994. In accordance with this section, the court has substituted Shirley S. Chater, Commissioner of Social Security, for Donna E. Shalala, Secretary of Health and Human Services, as defendant in this case.

Thomas A. Krause of Legal Services Corporation of Iowa, Des Moines, Iowa, for Plaintiff Richard Wigg.

Ana M. Martel of the United States Attorney's Office, Northern District of Iowa, Cedar Rapids, Iowa, for Defendant Shirley S. Chater, Commissioner of Social Security.

## ORDER REGARDING SECRETARY'S DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS

### TABLE OF CONTENTS

I. INTRODUCTION ................................................... 953
 A. Procedural Background ............................................. 953
 B. Factual Background ................................................ 953
 C. The Court's Jurisdictional Basis .................................... 957
II. ANALYSIS ........................................................ 958
 A. The "Substantial Evidence" Standard .................................. 958
 B. The Polaski Standard and Subjective Pain Credibility Determinations ..... 959
 C. Relative Burdens of Proof .......................................... 960
 D. Review of the ALJ's Decision ........................................ 960
 1. Wigg's prior application for benefits ................................. 961
 2. The ALJ's hypothetical and Wigg's subjective pain complaints ........ 961
 E. Relief ............................................................ 964
III. CONCLUSION ..................................................... 964

BENNETT, District Judge.

This case involves a plaintiff's applications for social security disability insurance benefits and supplemental security income which were denied on two prior occasions. Plaintiff suffers from borderline intellectual capacity and has difficulties with socialization skills and concentration and attention deficiencies. Plaintiff alleges his lapses in concentration are frequent and prevent him from performing any task for a significant period of time.

The administrative law judge ("ALJ") issuing the denial of benefits in this case characterized the plaintiff as "seldom" having deficiencies or lapses in concentration or attention. Therefore, Plaintiff argues the ALJ failed to properly describe Plaintiff's impairments and limitations regarding his inability to maintain concentration and attention. Consequently, Plaintiff asserts there is no substantial evidence in the record as a whole to support the ALJ's finding that Plaintiff is not disabled under the Social Security Act.

## I. INTRODUCTION

### A. Procedural Background

Wigg filed an application for social security disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act on September 30, 1992.[2] (Tr. 329, 333.). In his applications, Wigg alleged he had been unable to work due to his impairments since October 29, 1991. (Tr. 451.). His applications were denied initially, (Tr. 337, 339), and after reconsideration on April 1, 1993. (Tr. 343, 345). An administrative hearing was held concerning this matter on February 14, 1994, after which the ALJ determined Wigg was not disabled and not entitled to social security disability benefits on June 24, 1993. (Tr. 11.). On May 2, 1994, Wigg requested review of the ALJ's decision from the Social Security Administration Appeals Council. (Tr. 8.). On August 19, 1994, the Appeals Council denied Wigg's request and stated that "the [ALJ]'s decision stands as the final decision of the Secretary in your case." (Tr. 6.). Because the Appeals Council's August 19, 1994 letter denying Wigg's request represented the final determination of the Secretary, and because Wigg filed this action on October 13, 1994, there is no dispute that Wigg's complaint was timely filed with this court. Therefore, Wigg is entitled to a review of his case under 42 U.S.C. § 405(g). The court will now commence its review of the Secretary's decision in accordance with § 405(g) by determining whether that decision was supported by substantial evidence.

### B. Factual Background

The plaintiff in this case is Richard Wigg, a 33-year-old man from Fort Dodge, Iowa, who is five feet, seven inches tall and who weighs approximately 193 pounds. (Tr. 67–68.). Wigg is right-handed and has completed twelve grades of school, entirely comprised of courses in special education. (Tr. 73–74.). Wigg testified that he has difficulty writing and reading, especially "big words." (Tr. 74–75.).

Regarding his impairments, Wigg testified at his administrative hearing that his biggest problem which prevents him from being able to work in any capacity is his difficulty in keeping his attention on a specific job or task for long periods of time. (Tr. 77.). For example, Wigg stated he has trouble concentrating on the process of placing screws in a video booth when trying to reassemble it, as well as having difficulty with entering data on a computer at the Mini Cinema. (Tr. 78.). Specifically, Wigg claimed when he is working on one specific project, he can only concentrate on the project for a short time, and then suddenly, he becomes unaware of where he is or what he is doing. (Tr. 79.).

Wigg suffers from borderline intellectual functioning, (Tr. 375), which is a categorization used to describe a person with an I.Q. in the 71–84 range.[3] Diagnostic and Statistical Manual of Mental Disorders 684 (4th ed. 1994). Although Wigg claims he has not experienced any difficulty in maintaining his social relationships with friends and family nor had any problems getting along with any former employers, supervisors, or co-workers, (Tr. 359.), Dr. Douglas Epperson, a clinical psychologist at Disability Determination Services, noted in November 1992 that Wigg has "a number of moderate social limitations, apparently due to poor socialization. This would make him best suited for work settings that involve little or no contact with the general public, and limited contact with co-workers." (Tr. 388–89.). However, Dr. Epperson did state Wigg is able to understand,

---

2. Wigg filed two sets of applications for benefits under Title II and Title XVI, prior to filing the application at issue in this case. Wigg filed his first set of applications on August 29, 1984 (Tr. 137–40, 184–93), which were denied initially on October 10, 1984, and were not pursued. Wigg filed a second set of applications on June 27, 1985, (Tr. 145–48, 198–207), which were reviewed and ultimately denied by an administrative law judge on February 18, 1987. (Tr. 316–25).

3. Wigg obtained the following scores on the Wechsler Adult Intelligence Scale–Revised (WAIS–R):

| | |
|---|---|
| Verbal I.Q. score | 78 |
| Performance I.Q. score | 80 |
| Full Scale I.Q. score | 77. |

(Tr. 442.).

remember, and follow relatively simple instructions, and he has a demonstrated ability to perform "relatively simple, repetitive cognitive and behavioral routines in a competitive work setting." (Tr. 388.).

Upon referral by the Disability Determination Services, Dr. L.K. Berryhill, a psychiatrist, evaluated Wigg's condition on December 15, 1993. (Tr. 447.). Dr. Berryhill found that Wigg has a fair memory, and that his full-scale I.Q. was 77. Dr. Berryhill recommended that Wigg be encouraged to work with Vocational Rehabilitation in a sheltered workshop and eventually open employment. (Tr. 448–49.). Furthermore, Dr. Berryhill opined Wigg is able to handle benefits on his own behalf. (Tr. 449.).

In January 1994, Wigg completed a psychological evaluation at the request of Disability Determination Services. (Tr. 442.). Dr. Dan Rogers, the clinical psychologist who conducted this evaluation, found that based on tests of Wigg's verbal, visual, and general memory as well as his attention, concentration, and delayed recall, Wigg's memory is functioning in the low average range. (Tr. 444.). Dr. Rogers noted that "there [were] no areas of significant, specific weaknesses or strengths in his performance" on the memory tests. (Tr. 444.). Dr. Rogers reiterated Dr. Epperson's comments regarding Wigg's additional mental limitations, noting Wigg has a significant learning disability, and would have some difficulty remembering and understanding instructions and locations, but he should be able to learn adequately with sufficient repetition and supervision. (Tr. 444.). Dr. Rogers found Wigg's attention, concentration, and pace are somewhat poor, but attributed this deficiency to Wigg's lack of motivation. (Tr. 444.). Furthermore, Dr. Rogers opined because Wigg has had few employment experiences, Wigg's judgment and ability to respond to changes in the workplace is likely poor, and his ability to interact appropriately with co-workers and the public is likely impaired as well. (Tr. 444.). Lastly, Dr. Rogers stated if Wigg were to receive benefits, he could not handle them on his own behalf. (Tr. 444.).

Among Wigg's physical ailments, Wigg injured his left shoulder and his left knee in an automobile accident. However, at the time of the hearing, Wigg testified that his shoulder was "back to normal," and that his knee doesn't give him trouble anymore. (Tr. 80–81.). In addition, he was having back pain, but this pain had subsided after he sought treatment from a chiropractor. (Tr. 82.).

Regarding his daily activities, Wigg rides his bike as a means of transportation. He no longer possesses a driver's license because he has not paid fines relating to prior speeding tickets. (Tr. 70.). Wigg occasionally rides his bike around town all day by himself. (Tr. 95.). Wigg goes to the grocery store once a month with his parents because he has no other effective means of transportation. (Tr. 86, 443.). Although Wigg is unable to write out a shopping list, he chooses food he wants while he is in the store, without any assistance from his parents. (Tr. 75, 86.). Wigg cooks daily, preparing full meals for himself, although he claims he burns his food often. (Tr. 87, 359.). In addition, Wigg does all his own housework and laundry approximately once a week. (Tr. 87–88.). He watches television, both during the day and at night. (Tr. 360.). Specifically, he has watched soap operas during the day sporadically for approximately ten years. (Tr. 84.). Wigg testified he has trouble following all the story lines on these soap operas, but he is able to follow at least one story line at a time. (Tr. 85.). Wigg also occasionally fishes in the summertime, but he has to go with a friend because he cannot take the fish off the hook by himself. (Tr. 89.). He socializes with friends in Fort Dodge and occasionally takes trips with them to Ames, Iowa and Des Moines, Iowa. (Tr. 86.). Wigg smokes approximately one pack of cigarettes per day.

Wigg's work history is sparse, revealing no past relevant work as defined under the Social Security Act. Wigg currently mows lawns in the summer and shovels snow in the winter. (Tr. 70.). Wigg earns less than $150 per month performing these tasks. (Tr. 451.). In Wigg's last job, he worked at a video store, reshelving video tapes. (Tr. 71.). However, Wigg does not receive wages for this work; rather, he receives free videos to view as compensation. (Tr. 71, 451.). Wigg testified he could match the video identifica-

tion numbers on the shelves with the numbers on the cartridges themselves, but he suffered difficulty with reading the actual titles. (Tr. 75.). Wigg also had worked at a Mini Cinema as a part-time janitor. Wigg commenced this employment to repay Mini Cinema for a bad check he had written there. (Tr. 92.). He worked two hours per week for about four and one-half years. (Tr. 72.). However, he was terminated because he couldn't work at a competitive pace. (Tr. 73.). Don Wood supervised Wigg's work at both the video store and the Mini Cinema. Wood claimed Wigg "generally could not concentrate or maintain attention for any length of time on his work. There were occasions when he could work hard all day, mowing lawns, for example, and could concentrate, but not very often. [Wigg] needs much more supervision than other employees because he is not able to concentrate." (Tr. 453.). Furthermore, Wood opined that no employer would hire Wigg for a full-time position in competitive employment, stating "[Wigg] simply could not maintain his concentration on his work enough for full-time work." (Tr. 453.).

At the administrative hearing held on February 14, 1994, Wigg's father, Robert Wigg, testified regarding his son's alleged impairments. (Tr. 99.). Wigg's father drew Social Security Disability because of a degenerative disc in his back, but maintained a job at a car wash for a couple of hours per day. (Tr. 100.). Wigg's father testified that he and his wife live approximately fifty minutes from Wigg and that they visited Wigg two or three times per month. (Tr. 107–08.). He further claimed when Wigg mows the lawn, he sometimes will quit halfway through mowing the lawn, take a break to do something else, and then come back and finish mowing the lawn. (Tr. 110.). Wigg's father opined that Wigg's problem is not attributed to a lack of motivation; Wigg just does not seem to comprehend how to perform a task without supervision and guidance. (Tr. 111.).

In addition, Wigg's mother, Imogene Wigg, testified at the administrative hearing. (Tr. 112.). Wigg's mother claimed Wigg did a good job of buying nutritious foods from each of the four food groups when he shopped for groceries, even without making a list beforehand. (Tr. 114–15.). She further stated Wigg gets the same things every month when he shops, remembering what he needs without making a list. (Tr. 115.). Wigg's mother testified that Wigg's ability to work depends on the type of job he has. If he has a simple job, she opined he has the capability to work and keep his attention on the task at hand. However, if the task is complicated, Wigg is likely to lose track of what he is doing. (Tr. 117.). Additionally, Wigg's mother opined Wigg could not likely handle a simple, repetitive job for a full eight-hour day because he cannot concentrate for that duration of time without getting bored or antsy. (Tr. 118.). However, Wigg's mother does not attribute Wigg's lack of concentration to a deficiency in motivation. (Tr. 118.).

Sandra Trudiau testified as a vocational expert at the administrative hearing. First, the administrative law judge asked Trudiau to identify Wigg's past relevant work. Trudiau noted Wigg had performed work as a janitor or a cleaner, which is unskilled and in the medium category of physical exertion. Trudiau did not consider Wigg's previous work as a telephone solicitor because he did not perform that job as it is performed in the national economy. (Tr. 126.). The ALJ proceeded to pose several hypotheticals to Trudiau. Specifically, the following exchange occurred between the ALJ and Trudiau:

Q. ... I want you to assume that I find that the individual that we've just talked about in the vocational profile—I want you to assume that I would find that he has no exertional restrictions. That—well, let me rephrase that. He has no restrictions on his ability to sit, no restrictions on his ability to stand and walk. And he has the ability to lift and carry on an occasional basis up to 50 pounds, 25 pounds frequently. I do want you also to assume that there is some record in the file that he does have some chronic shoulder discomfort and should not frequently lift above shoulder level. I also want you to assume that this individual has a borderline I.Q. of verbal 78, performance 80, full scale 77. And on the basis of that I.Q., without additional mental impairment that he does

have slight limitations in activities of daily living. That he has moderate limitations in social functioning in that he's not well suited for work requiring more than minimal contact with the general public that's not intrical to the job so that's what I mean by minimal. And that he's not suited for work requiring close cooperation with fellow employees such as team work. He does, however, have the ability for casual contact with fellow employees and does have the ability to get along and respond to supervision. I want you to assume that he seldom has limitations in concentration, persistence in pace on simple routine and repetitive tasks. He is, however, not suitable for work involving complex or varied tasks. He's also not well suited for work involving written instructions or written communications as an intrical part of his job. And in most cases his work should probably be able to be reduced to visual instruction and how to learn it and again within the simple routine and repetitive range. He probably would also have a moderate impairment in adapting to frequent changes and work locations and assignments. With those limitations, would he be able to go back and do any of the work that he's done before or his past relevant work which was just janitorial is what you've told me?

A. Yes, he would be able to perform work as a cleaner, janitorial or a cleaner.

Q. If I determine that he's never done it a[t] SGA levels and therefore is not past relevant work it is also your opinion that he could do this within the general economy as opposed to how he performed it?

A. I believe that he would have difficulty in performing that job. I don't feel that he could perform that job.

Q. Based upon the hypothetical I gave you?

A. Yes.

Q. But he could go back and do what he was doing before?

A. Yes.

Q. All right. With regard to the hypothetical I gave you would he be capable of any other work in the national economy?

A. Yes, he would.

Q. What kind of work would he be capable of doing?

A. A hand packager job.

Q. What does that person do?

A. The[y] generally are packaging, well, they can package many different things but one example would be samples that you receive in your mail. Another thing would be putting products into a box, getting them ready for shipment.

Q. The skill level on this job?

A. It's unskilled light.

Q. Would he also be able to do unskilled medium within that category that I've given you?

A. Yes, he would.

Q. Do you have the numbers of those jobs?

A. In Iowa for the hand packager there are 7,700 of those jobs....

Q. Is that all within the light category or does that also include the medium?

A. It included the medium also.

Q. Okay. Any other jobs?

A. There would be a job as a hospital cleaner which is unskilled and the light occupation.

Q. How many of those jobs?

A. In Iowa there are over 4,000 of those jobs.

(Tr. 126–29.). Trudiau stated she considered assembly line/production line jobs to require close cooperation with their fellow workers and an overall teamwork approach. Therefore, she opined Wigg could not perform these jobs in the national economy. (Tr. 129–30.). Trudiau further stated if the individual in the ALJ's hypothetical did not have a marginal education but instead was illiterate, that individual would still be able to perform the jobs of a hospital cleaner or a hand packager. (Tr. 130.). Trudiau testified these jobs did not require close contact or more than minimal contact with the general public, nor did they involve close cooperation. (Tr. 130.). In addition, Trudiau noted these jobs are repetitive in nature and would require the same tasks every day, except that the hospital cleaner job could require a

change in regards to which floor of the hospital a person would be cleaning, but the required tasks would be the same. (Tr. 130.). However, Trudiau testified if the individual's ability in maintaining concentration and persistence in pace was such that it caused a moderate limitation in even simple, repetitive, and routine tasks, Wigg would not be capable of performing these jobs.

Wigg's attorney, Thomas Krause, asked the vocational expert some follow-up questions regarding the ALJ's hypotheticals and Dr. Rogers' comments regarding Wigg's condition in particular. (Tr. 133–35.). Krause added to the hypothetical that the individual's reliability was seriously limited, and based on this addition, Trudiau opined Wigg would have difficulty maintaining, over a long period of time, an occupation with that type of reliability. Furthermore, Trudiau considered Dr. Rogers' comments regarding Wigg's motivational problems and opined that Wigg's alleged lack of motivation might play a part in whether he maintains these jobs as opposed to whether he has the capability to perform these jobs.

In his decision, the ALJ concluded that Wigg does not have an impairment or combination of impairments which prevent him from performing work that exists in significant numbers in the national economy. Furthermore, the ALJ found that Wigg was "not disabled," as defined in the Social Security Act. With this factual background in mind, the court will now review its jurisdictional basis for hearing this case and then analyze the ALJ's ruling.

### C. The Court's Jurisdictional Basis

In *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), the United States Supreme Court described the procedural steps leading up to a district court's review of Social Security appeals as follows:

> The initial disability determination is made by a state agency acting under the authority and supervision of the Secretary. 42 U.S.C. § 421(a), 1383b(a); 20 C.F.R. §§ 404.1503, 416.903 (1986). If the state agency denies the disability claim, the claimant may pursue a three-stage administrative review process. First, the deter-mination is reconsidered *de novo* by the state agency. §§ 404.909(a), 416.1409(a). Second, the claimant is entitled to a hearing before an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 C.F.R. §§ 404.929, 416.1429, 422.201 *et seq.* (1986). Third, the claimant may seek review by the Appeals Council. 20 C.F.R. §§ 404.967 *et seq.,* 416.1467 *et seq.* (1986). Once the claimant has exhausted these administrative remedies, he may seek review in federal district court.

*Yuckert*, 482 U.S. at 142, 107 S.Ct. at 2291.

Section 1383(c)(3) of Title 42 of the United States Code provides that "(t)he final determination of the Secretary after a hearing ... shall be subject to judicial review as provided in section 405(g) of this title...." In pertinent part, 42 U.S.C. § 405(g) states the following:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia.... The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.... The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions....

42 U.S.C. § 405(g) (Supp.1995).

 Accordingly, the court has the power to affirm, reverse or remand the ALJ's

decision, and "(w)here the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal is appropriate." *Thompson v. Sullivan,* 957 F.2d 611, 614 (8th Cir.1992) (citing *Fowler v. Bowen,* 866 F.2d 249, 253 (8th Cir.1989)); *see also Simmons v. United States R.R. Retirement Bd.,* 982 F.2d 49, 57 (2d Cir.1992) (citing *Thompson,* 957 F.2d at 614; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980) (reversal proper where remand "would serve no purpose")); *Gavin v. Heckler,* 811 F.2d 1195, 1202 (8th Cir.1987) (reversal proper where "remand would be a futile gesture"). The court, however, cannot grant a remand merely because it is unhappy with the ALJ's result, *Melkonyan v. Sullivan,* 501 U.S. 89, 100–01, 111 S.Ct. 2157, 2163–64, 115 L.Ed.2d 78 (1991), or " 'because substantial evidence would have supported an opposite decision.' " *Frankl v. Shalala,* 47 F.3d 935, 937 (8th Cir.1995) (quoting *Smith v. Shalala,* 987 F.2d 1371, 1374 (8th Cir.1993) in turn quoting *Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir.1984)). Further, in order to remand a case such as this one, which falls under sentence four of 42 U.S.C. § 405(g),[4] the court must either affirm, modify or reverse the decision so that it will be considered a final judgment. *Melkonyan,* 501 U.S. at 101, 111 S.Ct. at 2164; *see also Shalala v. Schaefer,* — U.S. ——, ——, 113 S.Ct. 2625, 2627, 125 L.Ed.2d 239 (1993) (holding "a district court remanding a case pursuant to sentence four of § 405(g) must order judgment in the case and may not retain jurisdiction over the administrative proceedings on remand."). With this jurisdictional basis in mind, the court now turns to the standards to be applied upon review.

## II. ANALYSIS

### A. The "Substantial Evidence" Standard

▌ The Eighth Circuit's standard of review in Social Security cases is well-established. This court must affirm the findings of the ALJ if they are supported by substantial evidence in the record as a whole. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir.1994) (citing *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir.1992) (citing *McMillian v. Schweiker,* 697 F.2d 215, 220 (8th Cir.1983)); 42 U.S.C. § 405(g). " 'Substantial evidence is less than a preponderance' ..." *Orrick v. Sullivan,* 966 F.2d 368, 371 (8th Cir.1992) (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992)), but " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *see also Smith,* 31 F.3d at 717 (citing *Ghant v. Bowen,* 930 F.2d 633, 637 (8th Cir.1991)); *Metz v. Shalala,* 49 F.3d 374, 376 (8th Cir.1995). Put another way, "(t)he standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.' " *Culbertson v. Shalala,* 30 F.3d 934, 939 (8th Cir.1994) (quoting *Turley v. Sullivan,* 939 F.2d 524, 528 (8th Cir.1991), which, in turn, quoted *Bland v. Bowen,* 861 F.2d 533, 535 (8th Cir.1988)).

▌ When evaluating the evidence in an appeal from the Secretary's denial of benefits, the court must perform a balancing test, evaluating any contradictory evidence. *Sobania v. Secretary of HHS,* 879 F.2d 441, 444 (8th Cir.1989) (citing *Gavin,* 811 F.2d at 1199). "(I)f it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [this court] must affirm the [Secretary's] decision." *Orrick,* 966 F.2d at 371; *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989). Even if this court "might have weighed the evidence differently, [it] may not reverse the Secretary's decision when there

---

4. Sentence four of § 405(g) provides that:
 The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing.
 42 U.S.C.A. § 405(g) (pocket part 1994).

is enough evidence in the record to support either outcome." *Culbertson,* 30 F.3d at 939 (quoting *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992)). In other words, the court "must consider evidence that detracts from the Secretary's decision as well as evidence that supports it. [The court] may not, however, reverse the Secretary's decision merely because substantial evidence also would have supported an opposite decision." *Frankl,* 47 F.3d at 937 (citing *Smith,* 987 F.2d at 1374 (8th Cir.1993)).

"Review under this standard is not a rubber stamp for the ALJ, however." *Griffon v. Bowen,* 856 F.2d 1150, 1153 (8th Cir.1988) (citing *McMillian,* 697 F.2d at 220). The court must at all times keep in mind that prior to granting or denying benefits, the ALJ has a duty to fully and fairly develop the record. This mandate was recently summarized as follows:

> The Secretary acknowledges that it is her " 'duty to develop the record fully and fairly, even if ... the claimant is represented by counsel.' " *Boyd v. Sullivan,* 960 F.2d 733, 736 (8th Cir.1992) (quoting *Warner v. Heckler,* 722 F.2d 428, 431 (8th Cir.1983)). This is so because an administrative hearing is not an adversarial proceeding. *Henrie v. Dep't of Health & Human Serv.,* 13 F.3d 359, 361 (10th Cir.1993) (citing *Dixon v. Heckler,* 811 F.2d 506, 510 (10th Cir.1987)). "[T]he goals of the Secretary and the advocates should be the same: that deserving claimants who apply for benefits receive justice." *Sears v. Bowen,* 840 F.2d 394, 402 (7th Cir.1988). Moreover, "[a]n adequate hearing is indispensable because a reviewing court may consider only the Secretary's final decision [and] the evidence in the administrative transcript on which the decision was based."

*Battles v. Shalala,* 36 F.3d 43, 44–45 (8th Cir.1994) (quoting *Higbee v. Sullivan,* 975 F.2d 558, 562 (9th Cir.1992) (per curiam)). With these standards in mind, the court will now turn to the ALJ's evaluation of Wigg's case.

## B. The Polaski Standard and Subjective Pain Credibility Determinations

"An ALJ's credibility determinations are, of course, entitled to considerable weight." *Young v. Secretary of Health and Human Servs.,* 957 F.2d 386, 392 (7th Cir. 1992) (citing *Cheshier v. Bowen,* 831 F.2d 687, 690 (7th Cir.1987)); *see also Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir.), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1050, 98 L.Ed.2d 1012 (1988); *Hardaway v. Secretary of Health and Human Servs.,* 823 F.2d 922, 928 (6th Cir.1987). Nonetheless, in the Eighth Circuit, an ALJ may not discredit allegations of pain merely because of a lack of objective evidence; instead, he may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir.1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir. 1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322, *supplemented,* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987)). Under *Polaski,*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1) the claimant's daily activities;
>
> 2) the duration, frequency and intensity of the pain;
>
> 3) precipitating and aggravating factors;
>
> 4) dosage, effectiveness and side effects of medication;
>
> 5) functional restrictions.

*Polaski,* 739 F.2d at 1322. In other words, under *Polaski,* an ALJ is free to doubt a claimant's subjective pain complaints. However, he must support a denial of benefits based on a consideration of the above-mentioned five factors. Indeed, the *Polaski* court stated that "(t)he adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in

the evidence as a whole." *Id.* (emphasis in original).

As the Tenth Circuit has stated, "(t)o establish disabling pain without the explicit confirmation of treating physicians may be difficult. Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony evaluated by the ALJ and weighed alongside the medical evidence." *Huston v. Bowen,* 838 F.2d 1125, 1131 (10th Cir.1988) (citing *Luna v. Bowen,* 834 F.2d 161, 165 (10th Cir.1987)); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986); *Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 21 (1st Cir.1986); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986); *Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir.1984).

### C. Relative Burdens of Proof

A "disability" is defined in 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (1994). A disability is found when a claimant is "not only unable to do his previous work but cannot, considering ... his age, education and work experience, engage in any other kind of substantial gainful work which exists in [significant numbers in] the national economy ... either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A) (1994).

■■■ "To establish a disability claim, the claimant bears the initial burden of proof to show that he is unable to perform his past relevant work." *Frankl,* 47 F.3d at 937 (citing *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir.1993)); *see also Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995) (citing *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992)); 20 C.F.R. § 404.1512(c); *see also Johnston v. Shalala,* 42 F.3d 448, 451 (8th Cir.1994). "If met, the burden of proof then shifts to the Secretary to demonstrate that the claimant retains the physical residual functional capacity (RFC) to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education, and work experience." *Frankl,* 47 F.3d at 937 (citing *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc); 20 C.F.R. §§ 404.1520(f), 416.920(f)). *See also Johnston,* 42 F.3d at 451 (citing *Turpin v. Bowen,* 813 F.2d 165, 170 (8th Cir.1987)); *Hajek v. Shalala,* 30 F.3d 89, 93 (8th Cir. 1994) (citing *Evans v. Shalala,* 21 F.3d 832, 835 (8th Cir.1994)); *Mitchell v. Shalala,* 25 F.3d 712, 714 (8th Cir.1994); *Smith,* 31 F.3d at 717 (citing *Cline v. Sullivan,* 939 F.2d 560, 564 (8th Cir.1991); *Hajek,* 30 F.3d at 93 (citing *Evans,* 21 F.3d at 835); *Walker v. Shalala,* 993 F.2d 630, 632 (8th Cir.1993) (citing *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir.1992)); *Reed v. Sullivan,* 988 F.2d 812, 814 (8th Cir.1993)); *Edwards v. Secretary of Health and Human Servs.,* 809 F.2d 506, 507 (8th Cir.1987); *McCoy v. Schweiker,* 683 F.2d at 1142.

### D. Review of the ALJ's Decision

The ALJ determined Wigg had no past relevant work as defined in the Social Security Act. Then, although Wigg argues the ALJ neglected to shift the burden of proof to the Secretary, the record reflects the ALJ did, in fact, shift the burden of proof to the Secretary to demonstrate Wigg retains the residual functional capacity to perform jobs which exist in significant numbers in the national economy. The ALJ solicited testimony from the vocational expert, Sandra Trudiau, to attempt to satisfy this burden. *See Bates v. Chater,* 54 F.3d 529, 532 (8th Cir.1995) (Secretary met burden by soliciting vocational expert's testimony regarding jobs existing in significant numbers in the local and national economy which claimant could perform); *Robinson v. Sullivan,* 956 F.2d 836, 841 (8th Cir.1992) (same). Based on Trudiau's testimony, the ALJ concluded Wigg's impairments did not prevent him from performing work which exists in significant numbers in the national economy, namely, employment as a hospital cleaner or a hand packager. (Tr. 24.). Consequently, the ALJ found Wigg was not disabled within the definition of 42 U.S.C. § 405(g). Wigg

claims the ALJ did not accurately describe his limitations in the hypothetical posed to the vocational expert who testified at the administrative hearing. Therefore, the hypothetical cannot constitute substantial evidence because it did not include all of Wigg's impairments, namely his inability to maintain concentration and attention on a task. The issue for the court is whether the ALJ's decision was supported by substantial evidence. To make this determination, the court will now address the parties' arguments and conduct a review of the ALJ's order and the record as a whole.

### 1. Wigg's prior application for benefits

■ Because Wigg had previously filed applications for disability insurance benefits and supplemental security income that had ultimately been denied by an ALJ, the court must establish the scope of its review of Wigg's medical evidence, both objective and subjective. Regarding Wigg's prior applications for benefits, the ALJ held Wigg was not disabled in a final decision on February 18, 1987. (Tr. 317–25). Where a claimant has previously been denied social security disability benefits, the claimant must demonstrate his medical condition has become disabling after the date of this previous decision. *See Nelson v. Sullivan*, 966 F.2d 363, 364 n. 3 (8th Cir.1992) (regardless of the date the claimant alleges as the onset of his disability, if there has been a final decision regarding a prior application, the claimant must establish his condition became disabling after the date of the prior decision); *Gavin v. Heckler*, 811 F.2d 1195, 1199–1200 (8th Cir. 1987) (noting once a decision on a disability claim becomes final, "if it is not appealed to the district court pursuant to 42 U.S.C. § 405(g), it may not be reviewed by the district court as part of its review of another, subsequent decision by the Secretary," quoting, in turn, *Wilson v. Califano*, 580 F.2d 208, 211 (6th Cir.1978)). In addition, at least one court has held there is a presumption that a claimant's nondisability status as determined in a prior hearing continues. *See Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989); *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir.1986). Wigg has alleged the onset of his disability for purposes of this particular

request for benefits occurred on October 29, 1991. (Tr. 217.). Therefore, Wigg must show that his condition became disabling after February 18, 1987, the date of the ALJ's previous denial of benefits to support a finding of disability pursuant to the Social Security Act. Accordingly, the court limits its review of the record to evaluating whether substantial evidence exists in the record to support the ALJ's finding that Wigg's medical condition did not become disabling after February 18, 1987.

### 2. The ALJ's hypothetical and Wigg's subjective pain complaints

Wigg asserts the ALJ failed to consider the magnitude of his deficiencies in concentration and attention in regards to performing a job or even a simple, repetitive task. The ALJ found that Wigg seldom has deficiencies of concentration, persistence, and pace resulting in failure to complete tasks in a timely manner. (Tr. 30.). The ALJ maintained there was no evidence in the record to support Wigg's contentions that he suffered more than slight limitations in concentration, persistence, and pace regarding simple, routine, repetitive tasks. Furthermore, the ALJ alleged he accounted for these limitations on Wigg's abilities in his hypothetical to the vocational expert by describing the claimant in the hypothetical as "seldom" having deficiencies of concentration, persistence, and pace. Wigg's counsel, however, maintained that Wigg suffered a moderate limitation in simple tasks, as well as complex jobs, and included these limitations in the ALJ's original hypothetical. The vocational expert testified if the individual's ability in maintaining concentration and persistence in pace was such that it caused a moderate limitation in even simple, repetitive, and routine tasks, Wigg would not be capable of performing the jobs of hospital cleaner and hand packager, the only jobs the vocational expert testified Wigg could perform that existed in significant numbers in the national economy.

■ An ALJ's hypothetical question must fully describe a claimant's impairments. *Chamberlain v. Shalala*, 47 F.3d 1489, 1495 (8th Cir.1995) (citing *Shelltrack v. Sullivan*,

938 F.2d 894, 898 (8th Cir.1991)). If vocational expert testimony is based upon an insufficient hypothetical question, it "does not constitute substantial evidence to support a finding of no disability." *Id.; Ekeland v. Bowen,* 899 F.2d 719, 722 (8th Cir.1990) (hypothetical cannot constitute substantial evidence if it does not include all of the claimant's impairments); *McMillian v. Schweiker,* 697 F.2d 215, 222 (8th Cir.1983) (hypothetical is not substantial evidence where it failed to precisely set out claimant's impairments of fatigue and difficulty in concentration). However, "[w]hile it is clear that 'questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments,' *Greene v. Sullivan,* 923 F.2d 99, 101 (8th Cir.1991), a proper hypothetical question is "sufficient if it sets forth the impairments which are accepted as true by the ALJ." *House v. Shalala,* 34 F.3d 691, 694 (8th Cir. 1994) (citing *Roberts v. Heckler,* 783 F.2d 110, 112 (8th Cir.1985)). Therefore, the court's analysis of the sufficiency of the ALJ's hypothetical question involves a determination of whether the impairments accepted by the ALJ were appropriate.

To determine whether the ALJ's hypothetical accurately described Wigg's problems with concentration and attention, the court turns to an analysis of the record as a whole. Wigg testified at his administrative hearing that his biggest problem which prevents him from being able to work in any capacity is his difficulty in keeping his attention on a specific job or task for long periods of time. (Tr. 77.). Wigg stated he has trouble concentrating on placing screws in a video booth and screwing them in place, an arguably simple task which nevertheless proves to be problematic for Wigg because of his limitations in concentration. (Tr. 78.). The ALJ characterized Wigg's testimony regarding his inability to place these screws in the video booth as a difficulty in concentrating on the complex task of assembling a video booth. However, Wigg testified regarding his inability to twist the screws into place, not the whole assembling process of the video booth. The ALJ's characterization misrepresents Wigg's subjective complaint regarding his difficulty with a simple task involving putting screws in place as a more complex task than what Wigg is alleging. In addition, Wigg claimed he has difficulty concentrating on any project for more than a short period of time. Beyond such a period of time, he becomes unaware of where he is or what he is doing. (Tr. 79.).

Although Dr. Epperson, a clinical psychologist at Disability Determination Services, opined that Wigg could perform relatively simple routines in a competitive work setting, (Tr. 388.), his supervisor at his two most recent places of employment, Don Wood, observed that Wigg could not concentrate or maintain attention for any length of time on his work. (Tr. 453.). Wood further commented that "Wigg needs much more supervision than other employees because he is not able to concentrate." (Tr. 453.). Because of Wigg's inability to concentrate, Wood opined that no employer would hire Wigg for a full-time position in competitive employment. (Tr. 453.). In fact, Wigg was terminated from his position at the Mini Cinema because he could not work at a competitive pace. Furthermore, Wigg only worked two hours per week at this job and still could not maintain the level of attention and concentration required to maintain this job. (Tr. 73.).

Wood also noted that on occasion, Wigg could work hard all day mowing lawns and could concentrate but not very often. (Tr. 453.). However, despite the fact that Wigg could mow lawns "all day," Wigg's father testified that when Wigg mows the lawn, he sometimes will quit halfway through mowing the lawn, take a break to do something else because he cannot continue to concentrate on the task at hand, and later come back to finish the lawn. (Tr. 110.). Therefore, even when Wigg works hard all day mowing lawns, his inability to concentrate prevents him from completing his work without interruption. Wigg's mother further testified that she believed Wigg had the capability to work on a simple task for a short period of time; however, she opined he could not handle a simple, repetitive job for a full eight-hour day because he cannot concentrate for that duration of time. (Tr. 118.).

The ALJ focused his opinion regarding Wigg's ability to concentrate in part on Dr. Rogers' opinion concerning Wigg's motivation. Dr. Rogers found Wigg's attention, concentration, and pace to be "somewhat poor," but attributed this deficiency to Wigg's alleged lack of motivation. However, both Wigg's parents testified that Wigg's main problem is not a lack of motivation. Rather, Wigg wants to work, but cannot do so without much instruction and supervision because of his lapses of concentration and attention. The ALJ discredited Wigg's parents' comments regarding Wigg's level of attention and concentration, characterizing them as possessing opinions largely based upon natural parental concern for their child. However, Don Wood, Wigg's supervisor, also opined that Wigg's problems in the workplace were not related to a lack of motivation, but rather to his inability to concentrate on even a simple task for a significant period of time. Furthermore, Wigg's continued work activity of mowing lawns and shoveling snow and his persistence in completing these tasks, despite his lapses in concentration and attention during these tasks, evidence his motivation to obtain and maintain some form of employment despite his impairments. Although Dr. Rogers opined that Wigg's motivation contributed to his lack of concentration and persistence, it is evident there is substantial evidence in the record, specifically, the testimony of Wigg, his parents, and his supervisor, as well as Wigg's work history itself, to support the conclusion that Wigg's deficiencies in concentration are valid and not solely attributed to a lack of motivation.

Furthermore, Wigg's daily activities indicate the severity of his lack of concentration and attention as well. The ALJ noted Wigg could remember one storyline on one of the two soap operas he had been watching for ten years; however, the court does not find Wigg's ability to only recall one storyline on only one of the soap operas he watches over that significant period of time to constitute "substantial evidence" of a finding of no disability or to signify Wigg's ability to concentrate or maintain attention. In addition, Wigg testified that when he goes fishing, he has to go with a friend because he cannot take the fish off the hook by himself without

help. (Tr. 89.). Also, the ALJ noted Wigg cooks his own meals; however, the ALJ ignored Wigg's testimony that he burns most of the food he cooks because he forgets how long he has been cooking the food. (Tr. 87, 359.). Based on the difficulty Wigg apparently experiences in concentrating while watching television, fishing, and cooking, which are arguably simple, routine activities, the court concludes Wigg's daily activities indicate there is substantial evidence supporting a finding that Wigg has difficulty concentrating and maintaining his attention, and the ALJ did not accurately describe the extent of Wigg's difficulties in this area by characterizing him as "seldom" having deficiencies of concentration, persistence, and pace in the performance of simple, routine tasks.

The court recognizes the ALJ has the power to make credibility determinations regarding Wigg and his witnesses at the administrative hearing. Nonetheless, in the Eighth Circuit, an ALJ may not discredit allegations of pain merely because of a lack of objective evidence; instead, he may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Hinchey v. Shalala,* 29 F.3d 428, 432 (8th Cir.1994); *see also Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir.1990) (citing *Polaski v. Heckler,* 739 F.2d 1320, 1322, *supplemented,* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987)). Here, Wigg's subjective complaints regarding his deficiencies in concentration, persistence and pace and his daily activities do not appear to be inconsistent with the evidence in the record contained in Dr. Rogers' medical report, Wigg's parents' testimony, and the declaration of his supervisor in his most recent work settings.

The court's conclusion regarding Wigg's inability to concentrate in the context of competitive employment is supported by the opinions of Wigg's treating psychiatrist, Dr. Berryhill. Dr. Berryhill, whom Wigg saw at the request of Disability Determination Services, recommended that Wigg should work with Vocational Rehabilitation in a sheltered

workshop before embarking on "open employment." (Tr. 448–49.). Dr. Berryhill further opined Wigg is able to handle benefits on his own behalf. (Tr. 449.). Based upon Dr. Berryhill's 1993 opinion and the aforementioned evidence in the record pertaining to Wigg's motivation and his difficulties in maintaining concentration and attention in both work and everyday activities compiled after February 18, 1987, the date of the prior decision to deny benefits, the court finds the ALJ's hypothetical was, in fact, defective in that the ALJ characterized Wigg's limitations in concentration and attention as "seldom" occurrences. In light of the flawed hypothetical, the Commissioner has not met her burden of showing that Wigg can perform a job that exists in significant numbers in the national economy. Therefore, based on the testimony of Wigg, his parents, his supervisor, and the opinions of both Dr. Rogers and Dr. Berryhill, the court finds that there is substantial evidence in the record as a whole to support a finding of disability under the Social Security Act.

### E. Relief

Once a social security disability claimant has shown he is not able to perform his past relevant work, the burden shifts to the Commissioner to show the claimant is able to do other work. *Smith v. Shalala,* 46 F.3d 45, 47 (8th Cir.1995); *Hajek v. Shalala,* 30 F.3d 89, 93 (8th Cir.1994). Here, in his decision, the ALJ stated the burden had shifted to the Commissioner. (Tr. 21.) However, the Commissioner has failed to meet her burden of showing the existence of jobs in the national economy which Wigg could perform. Where the Commissioner has not carried her burden in this respect, this is not substantial evidence to support a finding of no disability, and the court may reverse and remand with instructions to the Commissioner to award benefits. *Smith,* 46 F.3d at 47. Furthermore, in cases where a hearing would simply delay receipt of benefits, the court shall reverse and award benefits outright. *See Talbott v. Bowen,* 821 F.2d 511, 514 (8th Cir.1987); *Cook v. Bowen,* 797 F.2d 687, 691 (8th Cir.1986). Therefore, because there is substantial evidence in the record indicating a finding of Wigg's disabili-

ty, and no substantial evidence to support the ALJ's finding of no disability, judgment is reversed and the case is remanded with instructions to the Commissioner for the payment of benefits.

### III. CONCLUSION

Based on its review of the record and the ALJ's decision, the court concludes the ALJ's hypothetical did not accurately describe Wigg's limitations regarding his inability to concentrate and maintain attention on even simple tasks. Rather, the ALJ described Wigg as only "seldom" having difficulties in these areas, when there is substantial evidence in the record as a whole clearly supporting the proposition that Wigg had difficulty concentrating and maintaining his attention on the most simplistic tasks. Because the ALJ's hypothetical did not accurately describe Wigg's limitations, the hypothetical cannot be considered substantial evidence to support the ALJ's finding of no disability. Furthermore, based on the medical opinions, the testimony of Wigg and his parents, the declaration of his supervisor, and the lack of inconsistency in the record regarding his difficulties with concentration and attention, the court finds there is substantial evidence to support a finding of disability. Therefore, judgment shall be entered reversing the ALJ's decision and remanding this case with instructions to the Commissioner to award benefits to Wigg.

**IT IS SO ORDERED.**