Michael HARMISON, Plaintiff,

v.

William A. HALTER, Commissioner
of Social Security, Defendant.

Civil No. 00–576(JRT/JMM).

United States District Court,
D. Minnesota.

March 31, 2001.

Michael P. Ferro, Ferro & Jones, Willmar, MN, for plaintiff.

Roylene A. Champeaux, Assistant United States Attorneys, Office of the United States Attorney, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Plaintiff Michael Harmison brings this action against defendant Commissioner of Social Security seeking judicial review of the denial of his application for supplemental security income. The parties have filed cross-motions for summary judgment. In

a Report and Recommendation dated November 7, 2000, the Magistrate Judge recommended that the Court grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment. This matter is before the Court on defendant's objections to the Report and Recommendation.

The Court has reviewed *de novo* defendant's objections to the Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts in part and rejects in part the Report and Recommendation and remands the matter for further administrative proceedings.

## BACKGROUND

### A. Procedural History

Plaintiff filed an application for supplemental security income on June 10, 1992, pursuant to Title XVI of the Social Security Act. He alleged that slow learning and illiteracy rendered him disabled. His claim was initially denied on February 19, 1993 and his Request for Reconsideration was also denied. A hearing before an Administrative Law Judge ("ALJ") took place on February 9, 1994. The ALJ issued a decision denying plaintiff's claim on April 13, 1994. After plaintiff's Request for Review was denied, he sought review of the ALJ's decision by the Court.[1]

On remand, a second hearing was held before a new ALJ on September 24, 1997. The ALJ denied plaintiff's claim on October 31, 1997. Plaintiff again filed a Request for Review with the Appeals Council, which was denied on January 5, 2000. Plaintiff then filed an appeal to this Court pursuant to 42 U.S.C. § 405(g) on March 9, 2000.

### B. Results of the Second Administrative Hearing

At the time of the second administrative hearing, plaintiff was 37 years old. He had attended school through the sixth grade before dropping out and was functionally illiterate, reading and writing at the kindergarten level and capable of arithmetic at the second grade level. The ALJ concluded that plaintiff had not engaged in substantial gainful activity since June 10, 1992, and that the medical evidence developed at the hearing established that plaintiff had severe impairments consisting of borderline intellectual functioning with a severe learning disability resulting in illiteracy. Plaintiff's impairments also included a personality disorder marked by antisocial behavior and narcissistic traits as well as a longstanding chronic and severe substance abuse disorder.

The ALJ concluded that when taking plaintiff's substance abuse problems into consideration he was "disabled" within the meaning of the Social Security Act, but without considering the substance abuse problems, he was not "disabled" within the meaning of the Act. The ALJ explained that "it was impossible to dissociate the claimant's substance abuse disorder from its impact upon his other mental impairments and his ability to perform work activity on a regular and sustained basis at substantial gainful activity levels." He determined that plaintiff's substance abuse was a material factor contributing to his finding of disability.[2] As a result, the ALJ ultimately concluded that plaintiff was not

---

1. The case was initially before The Honorable David S. Doty on the parties' cross-motions for summary judgment in 1996. On September 6, 1996, Judge Doty denied both parties' motions and remanded the case for further administrative action because the ALJ had posed a defective hypothetical question to the vocational expert during the first hearing.

2. 42 U.S.C. § 423(d)(2)(C) provides that "[a]n individual shall not be considered disabled for purposes of this subchapter if alcoholism or

"disabled" within the meaning of the Social Security Act because he retained the functional capacity to perform a significant number of jobs in the regional and national economy absent his substance abuse problems.

## C. Recommendation of the Magistrate Judge

On November 7, 2000, the Magistrate Judge concluded that there was not substantial evidence in the record to support the ALJ's conclusion that if plaintiff stopped abusing drugs and alcohol he would be able to perform jobs available in significant numbers in the national economy. The Magistrate Judge therefore recommended that plaintiff's motion for summary judgment be granted and defendant's motion be denied. He also recommended that rather than remand the case for further administrative proceedings, defendant should be directed to grant plaintiff an award of benefits because substantial evidence in the record supported the conclusion that plaintiff was "disabled" within the meaning of the Act.

## ANALYSIS

### A. Standard of Review

 The Court may reject the Commissioner's decision only if it is not supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). The possibility that the Court could draw two inconsistent conclusions from the same record does not preclude the decision from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir.1994). The Court may not substi-

tute its own judgment or findings of fact when reviewing the record for substantial evidence. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir.1993). Nevertheless, the Court must consider the weight of the evidence in the record and balance evidence that is contradictory. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987).

### B. ALJ's Decision is Not Supported by Substantial Evidence

Defendant objects to the recommendation of the Magistrate Judge because it contends that the Magistrate Judge applied the incorrect standard of review and reversed for an award of benefits, rather than remand for further proceedings. Defendant's primary objection is that the ALJ's decision was supported by substantial evidence and that the Magistrate Judge actually conducted a *de novo* review of the evidence. The Magistrate Judge concluded that the ALJ's decision that plaintiff's substance abuse was a material factor contributing to plaintiff's disability was not supported by substantial evidence in the record. The Court concurs with the Magistrate Judge that the record does not contain substantial evidence to support the ALJ's finding.

#### 1. ALJ's Findings

There is no dispute that the ALJ undertook the appropriate five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful employment at any time relevant to the decision. At the second step, the ALJ concluded that plaintiff was severely impaired.[3] At step three, the ALJ deter-

---

drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

**3.** Plaintiff's impairments included: borderline intellectual functioning; illiteracy, the claim-

ant being only able to read and write at the kindergarten level and perform arithmetic at the second grade level; a personality disorder manifested by antisocial and narcissistic traits; and a longstanding chronic and severe substance abuse disorder.

mined that plaintiff's impairments did not meet or equal any listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, and thus did not give rise to a conclusive presumption of disability. At step four, the ALJ found that plaintiff could not perform his past relevant work. At the fifth step, the ALJ concluded that absent considerations of plaintiff's alcohol and substance abuse, plaintiff had the residual functional capacity to perform work existing in significant numbers in the national economy as a kitchen worker. Based on this fifth step analysis, the ALJ concluded that plaintiff was not "disabled" within the meaning of the Act. I is primarily the fifth step analysis about which there is dispute between the parties.

### 2. Step Five in the Sequential Analysis

██ The fifth step in the sequential analysis requires the ALJ to determine whether plaintiff is capable of performing other work that exists in significant numbers in the national economy. *Warner v. Heckler,* 722 F.2d 428, 431 (8th Cir.1983). The ultimate burden of proving that plaintiff can perform jobs existing in substantial numbers in the national economy is on the defendant.[4] *Id.* This case, however, also involves plaintiff's chronic and severe substance abuse disorder. A plaintiff is not entitled to benefits if alcoholism or drug addiction is a contributing factor material to the decision that plaintiff is disabled. 42 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(3)(J). The claimant has the initial burden of showing that alcoholism or drug addiction is not material to the finding of disability. *Pettit v. Apfel,* 218 F.3d 901, 903 (8th Cir.2000). The key factor in determining whether alcoholism or drug

addiction is material to a determination of disability is whether the claimant would be found disabled if he or she stopped using drugs or alcohol. *Id.;* 20 C.F.R. § 404.1535(b)(1). The focus is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause. *Pettit,* 218 F.3d at 903. Even if the substance abuse is the cause of the disabling condition, substance abuse will not be material to the finding of disability so long as the condition would remain if the claimant stopped drinking or using drugs. *Id.* at 904. The ultimate question on review then, as accurately stated by the Magistrate Judge, is whether there is substantial evidence in the record to support the conclusion that absent plaintiff's drug and alcohol abuse, he would be able to perform jobs available in significant numbers in the national economy. An independent review of the record reveals that the ALJ's decision was not supported by substantial evidence.

 The medical evidence in the record does not suggest that plaintiff would be able to perform jobs available in significant numbers in the national economy absent his substance abuse problems. The record contains diagnostic reports of two licensed psychologists, Philip Sarff and Michael J. Fuhrman. The reports of both Dr. Fuhrman and Dr. Sarff demonstrate plaintiff's significant cognitive impairments and personality disturbances. Dr. Fuhrman expressly concluded in his evaluative report that "[c]onsidering the cognitive impairments plus the personality disturbances, Mr. Harmison is felt to be incapable of work activity at the time of this dictation, with due concern from the pros-

---

4. The burden shifts at step five from the claimant to the Commissioner. The burden has two aspects: first, the Commissioner must prove that claimant has the residual functional capacity to perform other kinds of

work; and second that there are jobs available in the national economy that can be realistically performed by someone with claimant's qualifications and capabilities. *Warner,* 722 F.2d at 431.

pect of decompensation and relapse in the face of additional (including vocational) pressures." [5] Notably, this determination did not hinge upon plaintiff's substance abuse.

While Dr. Sarff did not go as far as Dr. Fuhrman, his report concluded that plaintiff is "currently functioning in the borderline-deficient range of intelligence," and that plaintiff "exhibits several symptoms consistent with attention deficit disorder." Dr. Sarff went on to explain that:

> Mr. Harmison appears capable of understanding only simple and repetitive instructions, based on limited verbal comprehension skills. He will have difficulty remembering instructions over time, unless they are repeated, due to impaired concentration and attention span. Written reminders will not be useful to aid recall. . . . He is best suited for employment that involves limited contact with other people. Under times of stress and pressure, he will likely show decreased frustration tolerance, difficulty concentrating, and difficulties with absenteeism.

These evaluations cannot be read to constitute substantial evidence that plaintiff could perform jobs available in significant numbers in the national economy absent use of alcohol and drug addiction, or that plaintiff's substance abuse was a material factor contributing to his disability. To the contrary, the medical evidence present in the record demonstrates plaintiff's borderline-intelligence functioning, significant learning disability and personality disorder exist completely independent of any substance abuse disorder. Standing alone, the medical evidence contained in the record does not support the ALJ's finding.

However, the ALJ also relied on the testimony of a vocational expert who testified at the second hearing. The testimony of a vocational expert can constitute substantial evidence supporting the conclusion of the ALJ provided the ALJ poses an appropriate hypothetical question. *Pierce v. Apfel,* 173 F.3d 704, 706 (8th Cir.1999). Here, the testimony of the two vocational experts [6] found in the record does little to build support for the ALJ's finding. In fact, the vocational expert who testified during the first hearing, Dr. Audet, expressly stated that a person with the described limitations of plaintiff would **not** be able to perform jobs existing in the national economy.[7] The vocational expert in the

5. The ALJ chose not to give significant weight to Dr. Fuhrman's evaluation, but instead chose to rely almost exclusively on the evaluation of Dr. Sarff. While it is the ALJ's function to make credibility determinations and weigh the evidence, *Flynn v. Chater,* 107 F.3d 617, 620 (8th Cir.1997), it is appropriate for this Court, on review, to examine the entire record to determine whether the ALJ's determination is supported by substantial evidence.

6. One vocational expert testified at each administrative hearing on plaintiff's case. The hypothetical question posed to the vocational expert testifying at the first hearing was ultimately found to be defective because it was vague and contradictory.

7. The hypothetical posed by plaintiff's attorney to the vocational expert added the following limitations to the ALJ's initial hypothetical: the ability to concentrate on a task and stay on the job are limited to 15 minutes and then distraction or inattention occurs; a problem taking directions, needing reminders over again and not following supervisor's instructions; some difficulty remembering things learned in previous sessions for work. The vocational expert responded as follows to the hypothetical:

> If he's only able to stay on task for 15 minutes at a time and then is distracted that's going to be a problem for just about anyone. If he has problems with taking directions and following supervisory orders, those kind of things, that's going to be difficult to handle in a job also. If he has problems remembering things from the previous day, for example, if he goes back to work and he's told to do a particular task then comes back the next day and can't

second hearing, Dr. Tucker, when posed a hypothetical by the ALJ concerning a person with plaintiff's limitations, responded as follows:

> I think that in general this is the type of work that would be considered for an individual with this [sic] kind of limitations. Whether or not he's going to be able to function on a continuing basis I think is kind of iffy. Typically, dishwasher, kitchen helper, industrial cleaner, that type of job is typically the kind of job that we in rehabilitation work place individuals with the kind of limitations that are listed in this hypothetical. Some are successful, some are not. And I think it's questionable.

The response by Dr. Tucker is equivocal at best. He qualifies the response by stating that it is "kind of iffy" and "questionable" whether plaintiff would actually be able to function as a dishwasher or kitchen helper. This answer to the ALJ's hypothetical provides sufficient doubt as to whether a person with plaintiff's limitations would be able to perform jobs existing in substantial numbers in the national economy absent his substance abuse problems. The testimony of the vocational experts, taken either separately or together, cannot be read to constitute substantial evidence supporting the ALJ's determination.

When reviewing the record as a whole, considering both the testimony of the vocational experts and the medical evaluations, there is simply a lack of substantial evidence to sustain the ALJ's finding. The medical evidence and testimony relied on by the ALJ were equivocal at best, and did not rise to a level sufficient to satisfy

defendant's ultimate burden of proof on step five of the analysis.

## C. Remand for Further Administrative Proceedings is Appropriate in this Case

■ Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and the Court finds that the denial was improper, the Court remands the case for further administrative proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel,* 213 F.3d 1006, 1011 (8th Cir.2000) (internal quotations omitted). Consistent with that rule, the Court may enter an immediate finding of disability only if the record overwhelmingly supports such a finding and remand would only delay the receipt of benefits to which plaintiff is entitled. *Id.; Thompson v. Sullivan,* 957 F.2d 611, 614 (8th Cir. 1992). The Court reluctantly remands this case for further administrative proceedings rather than enter an immediate finding of disability.

■ While the Court is hesitant to once again remand this case and subject plaintiff to another administrative hearing, it feels constrained by the applicable standard of review. The Court is mindful that the Eighth Circuit has repeatedly cautioned that it is not the job of the reviewing court to reweigh the evidence or substitute its own judgment for that of the ALJ. *Stephens v. Shalala,* 46 F.3d 37, 39 (8th Cir.1995); *Johnson v. Chater,* 87 F.3d 1015, 1018 (8th Cir.1996). In this case, the evidence in the record comes strikingly close to meeting the "overwhelming evidence" standard that would permit this Court to enter an immediate finding that plaintiff is "disabled." [8] While the Court

---

remember how to do that task, if that continues that's going to interfere with his ability to hold a job. **So, no, I don't think there's any work he can do with those things factored in.**

(Emphasis added.)

8. The Court notes that the evidence contained in the record demonstrates that plaintiff comes very close to meeting the requirements of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05(C), which would give rise to a conclusive presumption of disability. § 12.05(C) provides that mental retardation is sufficiently

agrees with the Magistrate Judge that substantial evidence in the record supports a finding of disability in this case, the appropriate standard is whether there is "overwhelming evidence," not "substantial evidence," to support a finding of disability. The Court, therefore, will remand the case to the ALJ to permit further development of the record pursuant to 42 U.S.C. § 405(g). *Buckner*, 213 F.3d at 1010 ("sentence four remand is therefore proper when the district court makes a substantive ruling regarding the correctness of a decision of the Commissioner and remands the case in accordance with such a ruling"). On remand, the ALJ should further develop the record on the following issues: (1) whether plaintiff would be able to perform jobs available in significant numbers in the national economy absent substance abuse; and (2) whether plaintiff's substance abuse disorder is a contributing factor material to the determination of disability. Accordingly, the Court adopts in part the recommendation of the Magistrate Judge, finding that there is not substantial evidence in the record to support the conclusion of the ALJ, but remands the case for further development of the record in light of this opinion.

## ORDER

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, the Court **OVERRULES** in part and **GRANTS** in part defendant's objections [Docket No. 13],

and **ADOPTS** in part and **REJECTS** in part the Report and Recommendation of the Magistrate Judge [Docket No. 12]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 4] is **DENIED.**

2. Defendant's Motion for Summary Judgment [Docket No. 9] is **DENIED.**

3. The case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

severe to constitute a listed disability when the claimant has: (1) "[a] valid verbal, performance, or full scale IQ of 60 through 70," and (2) "a physical or other mental impairment imposing additional significant work-related limitation or function." A physical or other mental impairment is sufficient to satisfy the second part of this test when such impairment has more than a slight or minimal effect on plaintiff's ability to perform work. *Buckner*, 213 F.3d at 1011. In this case, IQ test results conducted by Dr. Howard J. Birky in

1991 showed a verbal IQ of 63 and a full-scale IQ of 67, both well within the range established in the regulations. The ALJ also made an explicit finding of a personality disorder, which would suggest that plaintiff falls within the category of § 12.08, satisfying the second part of the test set forth in the regulations. The Court is aware, however, that the second IQ test performed on plaintiff showed an IQ just outside the range listed in § 12.05(C).